FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
11/14/2022 3:12 PM
DAVID S. BORUNDA
CLERK OF THE COURT
Anna Secrest

THIRD JUDICIAL DISTRICT COURT
COUNTY OF DONA ANA
STATE OF NEW MEXICO

Case No. D-307-CV-2022-00996
Fitch, Casey B.

JANE DOE,

        Plaintiff,

   vs.

NEW MEXICO STATE UNIVERSITY,
NEW MEXICO STATE UNIVERSITY BOARD OF REGENTS,
JOSEPH BERNING, CAROLE CARSON,
ROBERT WOOD, PHILLIP POST,
MICHAEL MOREHEAD, LAURA CASTILLE,
HENRIETTA PICHON, YOSHITA IWASAKI, and
JOHN DOES 3 THROUGH 7 AND 9 AND 10,

        Defendants.

**FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL
RIGHTS AND TITLE IX AND OTHER TORTIOUS CONDUCT**

Plaintiff Jane Doe, by and through her attorneys, Paul Linnenburger of Lane +
Linnenburger + Lane LLP, Meredith Baker of the Law Office of Meredith Baker, LLC, and Johnn
Osborn of the Law Office of Johnn SL Osborn PC, brings the following causes of action:[1]

INTRODUCTION

College is a time of immense promise in a young life. It is also a time of tremendous
vulnerability and extreme power disparity between the educator and the burgeoning professional.
This is a case of power abused and vulnerability exploited as the institution simply looked the
other way for years while an unknown number of young women were manipulated, groomed,
abused and, at times, sexually assaulted by an educator with tremendous influence.

---

[1] This First Amended Complaint identifies John Does 1 and 2 from the initial Complaint.

Exhibit 1

New Mexico State University calls itself "an exciting place to tackle challenges, find answers to important issues and prepare for the future." Joseph Berning was a trusted educator purported to help students "prepare for the future" at NMSU. He held a position of prominence for nearly two-decades, a leader within the kinesiology department of the College of Health, Education and Social Transformation and a vaunted strength and conditioning coach. With his authority, position and influence, Berning harassed and groomed female students for years, coercing them into sexual relations and bragging about the same. Plaintiff wanted nothing more than to advance in life and her chosen profession, and Berning took full advantage of her situation. He manipulated, groomed, threatened and abused Plaintiff through his position at NMSU and used it to force subservience to his whims.

Plaintiff spent years living in fear of his outbursts, mired in self-blame, and unable to process his abusive conduct and its consequences. Only recently has she begun to process and confront the same, in the process recognizing there are likely many other survivors. Unfortunately, the NMSU system continues to work to sweep things under the rug and avoid justice for Plaintiff and others victimized by Berning. Rather than produce an inclusive, supportive environment for women, NMSU instituted a culture of silence that serves only to protect male predators. This suit is Plaintiff's effort to obtain not only justice, but the safe nurturing environment falsely promised to her by NMSU for those in the future.

## PARTIES

1.      Plaintiff is a resident of Bernalillo County, New Mexico.

2.      Defendant New Mexico State University New Mexico State University (hereinafter "NMSU") is a State of New Mexico educational institution and entity of the State of New Mexico operating as public university engaged in the business of post-secondary education with its primary

2

campus in Las Cruces, Dona Ana County, New Mexico. N.M. Const. art XII, § 11. New Mexico State University obtains and receives funding and financial assistance from the United States Government and did so at all times material hereto.

3.      Defendant New Mexico State University Board of Regents (hereinafter "Regents") is a collection of five individuals appointed and vested with management and oversight responsibilities and authorities over New Mexico State University, its programs and its employees. NMSA 1978, § 21-8-3. Its membership currently includes Chair Ammu Devasthali, Vice Chair Arsenio Romero, Neal Bitsie, Dina Chacon-Reitzel, and Christopher Saucedo. Defendant New Mexico State University Board of Regents and Defendant New Mexico State University are hereinafter collectively referred to as "NMSU".

4.      Defendant Joseph Berning was, at all times relevant hereto, a resident of Dona Ana County, New Mexico, and an employee and agent of NMSU and public employee pursuant to NMSA 1978, § 41-4-3. Defendant Berning is sued in his personal and official capacity and his actions material hereto were in the course and scope of his duties as an employee and agent of NMSU and Regents and under color of law.

5.      Defendant Carole Carson was, at all times relevant hereto, a resident of Dona Ana County, New Mexico, and an employee and agent of NMSU and public employee pursuant to NMSA 1978, § 41-4-3. Defendant Carson is sued in her personal and official capacity and her actions material hereto were in the course and scope of her duties as an employee and agent of NMSU and Regents and under color of law.

6.      Defendant Robert Wood was an employee and agent of NMSU and a public employee pursuant to NMSA 1978, §41-4-3, with managerial and supervisory responsibility over Defendant Berning as the head of the Department of Kinesiology and Dance at NMSU from 2009

to 2017. Defendant Wood is sued in his personal and official capacity and his actions material hereto were in the course and scope of his duties as an employee and agent of NMSU and Regents and under color of law.

7.      Defendants John Does 3 and 4 were employees and agents of NMSU and public employees pursuant to NMSA 1978, § 41-4-3, with managerial responsibility over Defendant Berning as Department Heads for the Department of Kinesiology during the relevant time period discussed below. Defendants Doe 3 and 4 are sued in their personal and official capacity and their actions material hereto were in the course and scope of their duties as employees and agents of NMSU and Regents and under color of law.

8.      Defendant Laura Castille was an employee and agent of NMSU and a public employee pursuant to NMSA 1978, § 41-4-3, with managerial responsibility over Defendant Berning as the Director of the Office of Institutional Equity at NMSU and oversaw the Title IX proceedings of Plaintiff instituted against Defendant Berning. As Title IX Coordinator for NMSU, Defendant Castille was responsible for managing all functions related to investigation and resolution of internal discrimination complaints and working closely with other NMSU leadership purportedly to safeguard civil rights and foster an inclusive environment for NMSU students, faculty, staff, and community members Defendant Castille is sued in her personal and official capacity and her actions material hereto were in the course and scope of her duties as employee and agent of NMSU and Regents and under color of law.

9.      Defendants John Does 5 through 7 were employees and agents of NMSU and public employees pursuant to NMSA 1978, § 41-4-3, with managerial responsibility over Defendant Berning as the successive Directors of the Office of Institutional Equity at NMSU. Defendants Doe 5 through 7 are sued in their personal and official capacity and their actions material hereto

were in the course and scope of their duties as employees and agents of NMSU and Regents and under color of law. Defendant Does 5 through 7 had the same responsibilities and roles as Defendant Catsille.

10.     Defendant Michael Morehead was an employee and agent of NMSU and a public employee pursuant to NMSA 1978, §41-4-3, with managerial and supervisory responsibility over Defendant Berning as the Dean of the College of Education at NMSU from 2008 until 2015. Defendant Morehead is sued in his personal and official capacity and his actions material hereto were in the course and scope of his duties as an employee and agent of NMSU and Regents and under color of law.

11.     Defendant Henrietta Pichon was an employee and agent of NMSU and a public employee pursuant to NMSA 1978, §41-4-3, with managerial and supervisory responsibility over Defendant Berning as the Interim Dean of the College of Health, Education, and Social Transformation during 2021 and 2022. Defendant Pichon is sued in her personal and official capacity and her actions material hereto were in the course and scope of her duties as an employee and agent of NMSU and Regents and under color of law.

12.     Defendant Yoshitaka Iwasaki is an employee and agent of NMSU and a public employee pursuant to NMSA 1978, §41-4-3, with managerial and supervisory responsibility over Defendant Berning as the Dean of the College of Health, Education, and Social Transformation. Defendant Iwasaki is sued in his personal and official capacity and his actions material hereto were in the course and scope of his duties as an employee and agent of NMSU and Regents and under color of law.

13.     Defendant John Doe 9 and 10 were employees and agents of NMSU and public employees pursuant to NMSA 1978, § 41-4-3, with managerial and supervisory responsibility over

Defendant Berning as Dean of the College of Education and/or College of Health, Education, and Social Transformation, under which the Department of Kinesiology rests. Does 9 and 10 are sued in their personal and official capacity and their actions material hereto were in the course and scope of their duties as employees and agents of NMSU and Regents and under color of law.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter and parties to this action pursuant to the Court's general jurisdiction, N.M. Const. art. VI, § 13, and 42 U.S.C. §1983,

15.     Venue is proper as all events giving rise to the claims presented herein occurred in Dona Ana County and Plaintiff is a resident thereof.

## FACTUAL ALLEGATIONS

16.     The preceding paragraphs are incorporated as if fully stated herein.

17.     Defendant Regents are responsible for oversight and management of the operations of NMSU, including through the development of policy and custom.

18.     Professors at NMSU are subject to the authority, supervision, management and direction of their department heads, the deans of their college, and also the Office of Institutional Equity, overseen by Director(s) Does 6 through 8.

19.     Upon information and belief, the department heads, deans, and the Office of Institutional Equity through its director have authority to oversee and institute disciplinary action, administrative action, and/or otherwise control and prevent misconduct by professors at NMSU. This includes proceedings to remove professors from the classroom, prohibit contact with students, and/or remove them from employment.

20.     According to organizational charts and the Regents manual, department heads are directly above professors, and deans are above department heads.

21.     The Director of the Office of Institutional Equity at NMSU is responsible for ensuring compliance with state and federal laws addressing sex and gender-based harassment and is responsible for coordinating with every other department, unit and college within the NMSU system to take appropriate steps to protect NMSU students and staff from discriminatory conduct, including any steps necessary to stop the conduct and prevent recurrence.

22.     The events discussed herein all occurred between 2003 and 2022.

23.     All events discussed herein as to NMSU occurred on or in relation to the NMSU Las Cruces, New Mexico campus.

24.     NMSU states its "mission" is to serve the needs of New Mexico and its people "through comprehensive programs of education, research, extension and outreach, and public service."

25.     NMSU advertises that it "fosters learning, inquiry, diversity and inclusion, social mobility, and the broader community."

26.     NMSU advertises that its "values" include:

a.      "Leadership: Promoting and creating the ability for Aggies to shape the future";

b.      "Access: Welcoming diverse populations to higher education and to the NMSU community";

c.      "Diversity & Inclusion: Embracing our differences as an asset and actively seeking to include wide-ranging perspectives";

d.      "Student-Centered: Supporting the education of our students through every aspect of the university, every day."

27.     NMSU sums up its values in the phrase "BE BOLD. Shape the Future."

28.     NMSU did not foster said values for female students within the Department of Kinesiology, but instead fostered an environment of discrimination, harassment, violence, sexual assault and abuse.

29.     In or around 2003, Joseph Berning was hired by NMSU as a professor.

30.     Since 2003 until approximately 2021, Berning was a professor within the Department of Kinesiology at NMSU under the supervision and authority of the other Defendants except for Carson.

31.     Berning acted as kinesiology program director for NMSU.

32.     Berning acted as director of the exercise physiology laboratory for NMSU.

33.     Berning acted as academic program director for NMSU's National Strength and Conditioning Association Education Recognition Program Strength and Conditioning Program.

34.     Berning acted as essentially the entire exercise and physiology program at NMSU.

35.     It was not possible for a student to complete the kinesiology program at NMSU without taking instruction from and interacting with Berning as there were certain necessary classes that only he taught.

36.     Berning often taught Anatomy and Physiology and an associated laboratory.

37.     Berning was known by students as a powerful and influential member of the NMSU faculty.

38.     Students of NMSU were made to believe that Berning was a NMSU educator capable of ensuring that students were accepted into programs of their desire and providing other educational and career opportunities to students.

39.     Female students were of particular interest to Berning.

40.     NMSU, the Regents, Wood, Berning, Post, Morehead and the Doe Defendants created a hostile atmosphere in the kinesiology department where sexual impropriety and sexual conduct on campus in kinesiology facilities was condoned and ratified and fostered the discriminatory and sexualized conduct of Berning. For instance, a used prophylactic was located in the kinesiology facilities and the matter was not addressed.

41.     Upon information and belief, prior to Berning arriving at NMSU, Defendant Carson was a student under him at another post-secondary educational institution and became involved in a long-term romantic and physical relationship with him, ultimately moving with Berning to Las Cruces when Berning came to work as a professor at NMSU.

42.     Upon information and belief, NMSU, the Regents, and the Doe Defendants failed to adequately and appropriately screen Berning prior to his employment and appointment to a powerful and influential position at NMSU, in particular considering the nature of his relationship with a former student, Carson.

43.     The Defendants were aware of Berning's troublesome history with female students as Carson taught an Anatomy and Physiology laboratory with Berning at NMSU, also as a faculty member.

44.     Carson and Berning remained romantic partners while they both were faculty and staff at NMSU, and, upon information and belief, held themselves out as married during that time.

45.     Carson and Berning resided together in Las Cruces.

46.     Berning and Carson collaborated and conspired to groom and manipulate female NMSU students to become sexual partners, primarily of Berning, but, at times, of Carson as well.

47.     Berning regularly harassed female students and made derogatory and sexualized comments about them to other students, faculty, and staff members at NMSU.

48.     Berning regularly discriminated against female students, sexually harassed female students, and contributed to an abusive environment for female students. This included regular sexual comments about and to female students, including commentary on their physical shape, body and what he perceived as attractiveness.

49.     Berning would keep female students alone with him in his office for extended periods of time, often with the door locked. Female students described being in the office with him such that they did not feel they could leave.

50.     It was common knowledge that Berning had a "type" of female student he targeted, and discussions occurred amongst students, staff and faculty concerning the same.

51.     Berning bragged about engaging in sexual relationships with female students, including engaging in sexual relations with female students in NMSU lab facilities.

52.     Berning used his authority, power, and influence to sexually harass, groom, manipulate and coerce female students to establish questionable and non-consensual sexual relationships with them.

53.     At least by 2010, Berning, in conjunction with Carson, was engaged in the grooming, harassment and abuse of a female student, using his position to gain control over her and manipulate and coerce her into a sexual relationship.

54.     NMSU and the Defendants have a pattern, policy and custom not to meaningfully engage in corrective action in regard to discriminatory and/or sexualized misconduct and not to appropriately ensure the female community of NMSU is adequately protected from discriminatory and/or sexual misconduct. For instance, when a faculty member of NMSU went to a female student's dorm room and tried to lay with her and asked her "how wet she was", that faculty member was still allowed on campus and NMSU and the Doe Defendants coordinated an

agreement that prohibited the victim from discussing the matter publicly, informing her classmates, or otherwise disparaging the perpetrator.

55.     The culture of silence present in the response to the incident noted above wherein a faculty member entered a female student's dorm room and engaged in unwanted sexually aggressive behavior embodies the patter, policy and custom of NMSU and Defendants that ultimately ratified, condoned, encouraged and permitted Berning to subject multiple females, including Plaintiff, to discrimination, sexually demeaning conduct, and sexual assault.

56.     Defendants had notice of Berning's harassment and abusive conduct towards female students no later than 2013.

57.     In 2013 NMSU received a report that Berning brought a female student to his office under false pretenses. Specifically, the report received in 2013 indicated Berning expressed to the female student a desire to discuss and assist in "career plans," conduct that would have been in line with his role at NMSU which included assisting female students, staff and alumni with career development and advancement.

58.     This report was shared with other Defendants, including Wood as department head of kinesiology.

59.     According to the 2013 report, once Berning had this female student alone in his office, he used a ruse to raise personal issues with her in an attempt to make her vulnerable and then take advantage of her vulnerability.

60.     The 2013 report further indicated that Berning began to rub and touch the female student while alone with her in his office after he made her feel vulnerable. The report indicated Berning expressed that "It's ok, no one is watching. There are no cameras.", "No one has to know",

and instructing her to "just let it go, give in", as he touched and caressed her, meaning he was instructing her to succumb to his sexual advances.

61.    The 2013 report further indicated the female student tried to exit, but Berning told her she needed to stay and she remained stuck for more than twenty additional minutes.

62.    The 2013 report further stated that, upon trying to escape, the female student discovered Berning had locked the door to his office during the incident and she had to manually unlock it to escape.

63.    The 2013 report further expressed that Berning had escalated his physical contact with the female student over time, much as he openly did with Plaintiff and other female students.

64.    The 2013 report also indicated the female student met with Defendant Post two days after the incident, and that upon arriving for the appointment with Defendant Post, she discovered Berning was in Post's office. It went on to state that Berning waited for her inside the department's main offices until she concluded her meeting with Post. When she tried to leave the department offices Berning aggressively followed her and yelled at her "Stop. Don't run away from me."

65.    Upon information and belief, NMSU, Wood, and the Doe Defendants substantiated that Berning engaged in sexual misconduct towards the female student in regard to the 2013 incident.

66.    Upon information and belief, as dean of the relevant college, Defendant Morehead was notified of the incident outlined in the 2013 report, received a copy of the report of said incident, and coordinated with Wood, the Doe Defendants, NMSU and the Regents to formulate a respond thereto.

67.     The student that made the 2013 report requested specific remedies, including being permitted to complete her education and that "*no other student to be put in the same situation or any other in which their personal safety is put at risk.*" This requested remedy was reasonable but was not abided by the other Defendants.

68.     Following the 2013 incident, Berning was not subjected to meaningful discipline or corrective action by any other Defendant despite the investigation having substantiating extremely concerning sexualized behavior and misconduct towards a female student, including unwanted physical and sexual advances conducted in a locked faculty office. This further encouraged, ratified and condoned the sexualized discriminatory behavior present at NMSU and within the kinesiology department.

69.     Upon information and belief, following the 2013 incident, Defendants took no meaningful steps to protect the NMSU community from Berning's discriminatory behavior and sexual misconduct, to stop Berning's conduct and/or to prevent a recurrence of similar conduct. For instance, Berning's access to facilities was not restricted although he had been shown to use them to engage in discriminatory behavior and sexual misconduct where he felt there were "no cameras." This further encouraged, ratified and condoned the sexualized discriminatory behavior present at NMSU and within the kinesiology department.

70.     Following the 2013 incident and investigation thereof, Berning continued engaging in discriminatory and sexualized conduct with female students through his position as an NMSU faculty member and said actions were open and notorious. The failure of any other Defendant to meaningfully address these open activities, discipline Berning or otherwise engage in corrective and/or remedial action further encouraged, ratified and condoned the sexualized discriminatory behavior present at NMSU and within the kinesiology department.

71.     Berning also engaged in physically threatening behavior towards other faculty and students following the 2013 incident. He was not meaningfully disciplined for that conduct and there was not appropriate corrective action taken by any other Defendant. This further encouraged, ratified and condoned his aggressive behavior.

72.     Despite having locked a female student into a room with him for the purpose of manipulation, unwanted sexual advances, and sexual assault, NMSU continued to employ Berning as an influential and powerful educator and employee with ready access to female students, authority, and power over them. At the same time, no meaningful corrective action or discipline was instituted. This further encouraged, ratified and condoned the sexualized discriminatory behavior present at NMSU and within the kinesiology department.

73.     The failure of NMSU and the other Defendants to meaningfully discipline or require corrective action of Berning emboldened Berning to the point that he would eventually use his position at NMSU to manipulate, coerce, and sexually assault Plaintiff and others.

74.     NMSU's and the other Defendants' response to Berning's and other male's aggression and discriminatory conduct towards women served to silence the voices of women that itself constituted harassment and created unequal opportunities and discrimination.

75.     Around the same time Berning was engaging in sexual misconduct during the 2013 incident and the other Defendants were failing to engage in meaningful discipline or appropriate corrective action as thereto, Plaintiff was a student in Berning's anatomy and physiology laboratory class.

76.     The student that made the 2013 report and asked that "no other student be put in the same situation" had also been a student in one of Berning's classes.

77.     Plaintiff was not notified of Berning's history and misconduct by the Defendants and the Defendants did not restrict his access or otherwise protect Plaintiff and other females.

78.     Plaintiff's relationship with NMSU and Berning began in or before 2013 and continued thereafter.

79.     Thereafter, Berning used his position at NMSU to "mentor" Plaintiff, which in actuality was simply grooming her for future sexual abuse.

80.     In addition to being a professor, Berning was the director of NMSU's National Strength and Conditioning Association Education Recognition Program Strength and Conditioning Program. Using this position and prestige, Berning provided strength and conditioning training to Plaintiff, a female student, in private NMSU gym facilities for some time.

81.     These "training" sessions often took place in faculty areas of NMSU.

82.     Berning groomed Plaintiff and engaging in sexual harassment towards her during these training sessions at NMSU facilities.

83.     For instance, during one of the earliest sessions, Berning suggested he and Plaintiff should seek a deeper relationship and inquired of Plaintiff as to her sexual fantasies.

84.     Berning also regularly pressed his body against Plaintiff's during training sessions at NMSU facilities in an aggressive manner. This mimicked a complaint from the 2013 report in which the female student indicated Berning recently "has given me more physical attention" including continuous "nudges" with his body.

85.     Upon information and belief, Berning's close attention to certain female students was common knowledge and the students, staff and faculty discussed the "type" of female that Berning preferred and this was, or should have been known to, each of the Defendants.

86.     Berning also used violence and intimidation to gain control over Plaintiff early during the "mentoring." This included extreme anger, demeaning outbursts and episodes of physical violence. This included an incident wherein Berning shoved Plaintiff to the ground, where she hit her head on the pavement, and also expressed demeaning, derogatory and threatening language to her.

87.     On another occasion, Berning grabbed Plaintiff by the hips and pulled her onto his lap to show her a video at NMSU facilities. When this occurred, Plaintiff was extremely uncomfortable, but also incredibly fearful due to Berning's history of angry outbursts and felt she must comply with his actions and directives.

88.     During another instance, Berning brought Plaintiff into his office at NMSU, removed all his clothing and openly maneuvered his penis around in front of her. Upon information and belief, this was the same office Berning had locked the female student in during the 2013 incident to make unwanted advances towards her, including groping.

89.     During this time period, Carson actively engaged in supporting Berning's efforts, including at least one occasion wherein she "advised" Plaintiff to simply not make Berning angry and to do what he instructed. Carson suggested going along with Berning's advances would gain his trust and help Plaintiff in her academic and professional advancement as a member of the NMSU community.

90.     As a "mentor" to Plaintiff, Berning began to control her life in a significant manner, including infusing himself into her financial life and family life in a manner that created a situation wherein Plaintiff was dependent on Berning.

16

91.     Berning also injected himself into personal medical decisions of Plaintiff, including demanding to accompany her to the physician and attempting to control her reproductive health decisions. Berning expressed anger when Plaintiff did not comply.

92.     On at least one occasion, Berning did accompany Plaintiff to the student health center and directed her to inform staff he was her uncle. Health center staff became suspicious and kept Berning out of the examination room initially and inquired of Plaintiff if he was really her uncle and she informed them he had directed her to say so, but that he was her professor.

93.     In relation to said visit by Plaintiff to the student Health Center, staff noted in her chart that "Professor Berning" had accompanied Plaintiff under the guise of assisting her in career advancement. This was the same tactic and method of operation Berning had used to corner and assault the female student in regard to the 2013 report for which no meaningful discipline or remedial measures were undertaken by the Defendants.

94.     Despite the eerie similarities between the 2013 report and Berning's conduct towards Plaintiff while injecting himself into her personal medical affairs, conduct which was immediately unusual and suspect for a male professor with a history such as his, no meaningful action, investigation or inquiry was conducted by NMSU or the other Defendants.

95.     Berning further made Plaintiff dependent on him for academic and professional advancement. He exchanged her subservience to him for academic positions, and further made Plaintiff's advancement contingent on his and Carson's assistance as NMSU fixtures in obtaining employment and fulfilling requirements of the educational program necessary to fulfill graduation and professional licensure requirements.

96.     Berning arranged for Plaintiff to obtain employment at NMSU as a teaching assistant and research assistant with himself and other faculty at NMSU and in the kinesiology department.

97.     Berning used this employment relationship to further engage in misconduct towards Plaintiff, including incidents of sexual aggression on campus.

98.     Berning used his position and authority within NMSU to ensure Plaintiff's complete subservience to him.

99.     While acting as mentor and using his position at NMSU as a basis, Berning raped Plaintiff using similar tactics and language from the 2013 incident, confining Plaintiff alone, telling her to "let it go" and forcing himself upon her. Unfortunately for Plaintiff, unlike the female student in 2013, she was unable to escape physically coerced sexual intercourse against her will.

100.    Berning had non-consensual sexual relations with Plaintiff on several occasions, including at locations on campus such as his office. Berning's access to these locations was not restricted by the other Defendants even after the 2013 incident.

101.    Over the coming years, Berning and Carson had non-consensual sexual relations with Plaintiff together.

102.    Using their position, authority, and influence as NMSU educators, Berning and Carson manipulated and coerced Plaintiff into moving into their home in Las Cruces, New Mexico, and into an extended three-way relationship. Berning and Carson primarily sought Plaintiff to be a partner for sexual activity for Berning, including sexual activity on campus.

103.    Berning controlled Plaintiff's daily activities through his position, authority, and influence, including detailed multi-page task lists for Plaintiff to complete for Berning and Carson.

104.    Berning and Carson used Plaintiff as a servant at times, including very lengthy demeaning "to do" lists which were controlling and abusive. These lists were provided to Plaintiff through the NMSU email system and available to NMSU and the other Defendants.

105.    Berning previously used the NMSU email system to provide similar controlling and abusive demands to at least one other female student. Upon information and belief, NMSU, including the other Defendants, was aware of Berning's behavior in this regard.

106.    Upon information and belief, none of the other Defendants placed Berning under any monitoring or other observation to ensure he did not continue these prior activities or to make sure the NMSU community was safe, in particular females associated with the kinesiology department as students or staff.

107.    As Carson instructed, Plaintiff had to do anything Berning wished in order to avoid getting him upset and triggering additional violent outbursts directed towards her.

108.    Berning was permitted by NMSU and the other Defendants to continue teaching courses to female students, maintain female graduate students, and mentor female students despite knowledge of his history of inappropriate behavior, discriminatory behavior, and sexual assault.

109.    Defendants utterly disregarded the safety of Plaintiff and other females within the NMSU community when they failed to meaningfully discipline Berning or otherwise take appropriate and necessary corrective action following incidents of which they were aware and/or should have been aware or to otherwise take reasonable steps to ensure the safety of females in the NMSU community.

110.    The failures, omissions, and actions of the other Defendants permitted, endorsed, and ratified Berning's and Carson's conduct, which was discriminatory, abusive, and constituted violations of federal and state law.

111.    The failures, omissions, and actions of Defendants caused Plaintiff to be harmed by said conduct.

112.    Berning coerced, threatened, manipulated and otherwise caused duress to Plaintiff that prevented Plaintiff from recognizing and/or initiating any legal claim, including through separating her from friends and family and making her entirely dependent on he and Carson for employment, shelter and basic necessities.

113.    The Defendants fraudulently concealed Berning's activity from Plaintiff and other students until 2022.

114.    Plaintiff's injuries and damages were such that she was prevented from recognizing the conduct of Berning and Carson as a source of injury to her.

115.    Plaintiff was manipulated and placed under such duress to the point that she was unable to comprehend and enforce her legal rights or liabilities.

116.    When Plaintiff finally was able to comprehend and enforce her rights and initiated formal Title IX proceedings with NMSU in regard to the conduct of Defendants Berning and Carson, Defendants again worked to conceal Berning's activities from broader reveal.

117.    During the Title IX investigation, Plaintiff was instructed by an agent of Defendants not to access her "Aggie Account" – meaning email, transcripts, and other potential evidence concerning her claims here. This effectively blocked Plaintiff from discovering the depth of the evidence supporting her claims. (As of the filing of this First Amended Complaint, Plaintiff's email appears to have been wiped by Defendants).

118.    The preliminary Title IX investigation appeared to verify Plaintiff's complaint.

119.    Plaintiff appeared for the Title IX hearing as scheduled on the morning of July 13, 2022, expecting to be heard as required by Title IX.

120.    When Plaintiff appeared, Defendant Castille informed her that NMSU and the Regents had entered into an agreement with Berning the evening before and that Berning had, the night before, retired quietly without any Title IX findings against him despite the damning investigatory report.

121.    Plaintiff was informed at the hearing by Defendant Castille that, as a result of said agreement, there would be no hearing on her complaint, no opportunity for her to be heard or to procure remedial action, and her Title IX proceedings would be dismissed.

122.    As indicated below, the statements and reasons provided by Castille to Plaintiff for dismissal of her Title IX complaint and proceedings were, at a minimum, extremely misleading, and likely outright falsehoods.

123.    Plaintiff was not consulted or included in any discussion as to said agreement.

124.    Upon information and belief and based on usual practice and job responsibilities and roles, Defendants Pichon, Iwasaki, Castille and Post were involved in the resolution of the Title IX proceedings which occurred without consultation or inclusion of Plaintiff.

125.    A formal written Agreement with Berning and the Regents as formal parties thereto was entered into and executed no earlier than July 28, 2022, more than two weeks after the Title IX hearing that was dismissed by Castille and the other Defendants.

126.    In fact, Berning did not "retire" until 5:00 p.m. on July 13, 2022, which was after the scheduled Title IX hearing was supposed to commence. In other words, at the time of the Title IX hearing on July 13, 2022, Berning was an active employee of NMSU.

127.    Nevertheless, the aforementioned Agreement falsely stated that "NMSU has agreed to vacate the Title IX hearing" "[b]ecause Berning is no longer an active employee."

128.    The Agreement indicated there would be no findings, admission or concession as to liability in any of the manners addressed therein, including the Title IX action instituted by Plaintiff. Plaintiff was not privy to these discussions or agreement and did not consent thereto.

129.    The Agreement did not provide for notification to any potential future employer of the issues surrounding Berning's actions towards female students.

130.    Plaintiff was not provided a copy of the agreement or the terms therein. Her counsel was forced to utilize a public records request to later obtain a copy of the Agreement that was not fully executed.

131.    The manner in which the Title IX proceedings and settlement with Berning were conducted by NMSU and the Defendants and hidden from Plaintiff was itself a continued act of discrimination on the basis of sex and harassment and violence directed at Plaintiff by NMSU and other Defendants in violation of the United States Constitution and the New Mexico Constitution.

132.    Dismissal of the Title IX proceedings and resolving the matter without involvement of Plaintiff or her representatives in that manner was inequitable to Plaintiff and was further harassment and discrimination of her on the basis of sex by NMSU and other Defendants in violation of the United States Constitution and the New Mexico Constitution.

133.    Dismissal of the Title IX proceedings and resolving the matter without involvement of Plaintiff or her representatives in that manner removed the ability of Plaintiff to procure additional remedies in violation of 34 C.F.R. § 106.45(b)(1)(i) and was continuing and further discriminatory conduct by NMSU and other Defendants in violation of the United States Constitution and the New Mexico Constitution.

134.    Dismissal of the Title IX proceedings and resolving the matter without involvement of Plaintiff or her representatives in that manner deprived Plaintiff of an opportunity for an

objective evaluation of all relevant evidence and was further harassment and discrimination of her

on the basis of sex by NMSU and other Defendants in violation of the United States Constitution

and the New Mexico Constitution.

135.    Dismissal of the Title IX proceedings and dismissing the matter without

involvement of Plaintiff or her representatives in that manner and the corresponding failure to

provide specific, simultaneous written notice thereof and reasons therefor violated Title IX and

corresponding regulations and was itself further harassment and discrimination of Plaintiff on the

basis of sex by NMSU and other Defendants in violation of the United States Constitution and the

New Mexico Constitution.

136.    Plaintiff, like the student that made the 2013 report, remains extremely concerned

that no other female be put in the same situation as to Berning and would have objected vehemently

to the agreement that permitted Berning to quietly retire from NMSU rather than his misconduct

be addressed meaningfully.

137.    The handling of the Title IX investigation, hearing and dismissal thereof evidences

callous indifference and deliberate disregard on the part of Defendants and is further evidence of

the practice, policy and custom that creates a culture of silence and condones, ratifies, encourages

and supports discriminatory and abusive conduct towards females.

138.    The handling of the Title IX investigation, hearing and dismissal thereof evidences

a practice, policy and/or custom put in place by NMSU and Defendants which inequitably benefits

and protects male, particularly male educators, over females within the NMSU community in

violation of the United States Constitution and the New Mexico Constitution.

139.    The manner in which the Title IX proceedings were dismissed and concluded,

without the input or involvement of Plaintiff, and, in fact, hidden from her, was itself a hostile,

discriminatory action in violation of the United States Constitution and the New Mexico Constitution by NMSU, the Regents, Berning and the other Defendants, in particular Post, the department head, Pichon and Iwasaki, the deans overseeing Berning at the time, and Castille, the Title IX Director.

140.    Silencing the voice of Plaintiff in this manner is itself an act of discriminatory violence and revictimization in violation of the United States Constitution and the New Mexico Constitution by NMSU, the Regents, and the other Defendants, in particular Post, the department head, Pichon and Iwasaki, the deans overseeing Berning at the time, and Castille, the Title IX Director.

141.    The conduct of Defendants was motivated by evil motive or intent.

142.    The conduct of Defendants involved reckless or callous indifference to federally-protected civil rights of Plaintiff and others.

143.    The conduct of Defendants involved reckless or callous indifference to civil rights of Plaintiff and others protected by the Bill of Rights to the New Mexico Constitution.

144.    Given Berning's role, position and authority at the university, it was foreseeable that his conduct would result in harm to female students, staff and alumni. This foreseeability extended to former students, in part due to the continuing sexual relationship Berning held with Carson, a former student of his.

145.    Given Berning and Carson's continuing sexual relationship in the context of Carson being a former student of Berning's, it was foreseeable that Berning's conduct and a failure to address it would result in harm to students and staff, current and former.

146.    It was foreseeable to Defendants that the actions and omissions of Defendants as to Berning would result in continued and further danger and harm to Plaintiff and other female

students, staff and alumni of NMSU associated with the kinesiology program while they were students and staff and afterwards.

147. The conduct of Defendants was willful, intentional, wanton, or taken in utter disregard for the safety and well-being of others, including Plaintiff.

CLAIMS

Count I
(Defendants Berning and Carson - 42 U.S.C. § 1983)

148. The preceding paragraphs are incorporated as if fully stated herein.

149. Plaintiff was a member of a particular closed and limited group, that being female students at NMSU.

150. Male students at NMSU were similarly situated to Plaintiff.

151. Plaintiff was a member of a particular closed and limited group, that being female employees at NMSU.

152. Male employees at NMSU were similarly situated to Plaintiff.

153. Plaintiff has rights to the equal protection of law and bodily integrity protected by the Constitution and the Fourteenth Amendment thereto.

154. Defendant Berning deprived Plaintiff of said rights.

155. Defendant Berning deprived Plaintiff of her right to the equal protection of the law when he sexually harassed, demeaned, intimidated, physically and sexually assaulted, and otherwise abused Plaintiff because of her gender and for his own gratification and sexual purposes.

156. Defendant Berning did the same with other female students and staff at NMSU, and NMSU was on notice of said conduct.

157. Defendant Berning did not do so with male students and staff at NMSU.

158. Defendant Carson deprived Plaintiff of the same rights.

25

159.    Defendant Carson deprived Plaintiff of her right to the equal protection of the law when she coordinated, encouraged, and participated in Defendant Berning's actions as to Plaintiff because of her gender and for his and her gratification and sexual purposes.

160.    Defendant Carson did not do so with male students or staff.

161.    Defendants Berning and Carson violated Plaintiff's due process rights to bodily integrity.

162.    Defendant Berning's abuse of Plaintiff was egregious and outrageous and shocks the conscience in its depravity, dangerousness, and brutality.

163.    Defendants Berning and Carson were state actors in their positions with NMSU and acted in violation of Plaintiff's civil rights as state actors.

164.    Defendants Berning and Carson were carrying out the functions and duties of their positions with NMSU in their interactions with Plaintiff, including as educators, trainers, mentors, and purveyors of professional development opportunities for students and alumni of NMSU.

165.    Defendants Berning and Carson willfully acted in concert together to violate Plaintiff's civil rights.

166.    Defendants Berning and Carson's conduct was egregious and created unreasonable risk to Plaintiff and other members of the class of female students at NMSU.

167.    Defendants Berning and Carson's conduct was egregious and created unreasonable risk to Plaintiff and other members of the class of female staff at NMSU.

168.    Defendants Berning and Carson's conduct shocks the conscience and was intentional, reckless, willful, and exhibited callous indifference to the rights of Plaintiff.

169.    Defendants Berning and Carson's conduct was a proximate cause of Plaintiff's injuries.

<u>Count II</u>
(Defendants NMSU, Regents, Carson, Wood, Post, Morehead, Pichon, Iwasaki, Castille
and Doe Defendants - 42 U.S.C. § 1983)

170.    The preceding paragraphs are incorporated as if fully set forth herein.

171.    NMSU, Regents, Carson, Wood, Post, Morehead, Pichon and Iwasaki Castille and the Doe Defendants had a duty to ensure the practices, policies, or customs of NMSU comport with the standards required by the United States Constitution.

172.    Said Defendants had a duty of due care as it relates to supervising its educators, staff and faculty, including a duty to adequately screen, hire, train, supervise, discipline and maintain educators, faculty and staff.

173.    Said Defendants failed to exercise due care in the screening, hiring, training, supervision, discipline and maintenance of Defendants Berning and Carson.

174.    Said Defendants failed to provide adequate training, supervision and discipline to Defendant Berning when they permitted Berning to maintain access, authority and influence over female students, staff and invitees, even after notice of improper behavior, including sexual assault and aggression, controlling and abusive behavior.

175.    Said Defendants failed to provide adequate training, supervision and discipline to Defendant Berning in response to reports of inappropriate conduct towards female students, staff and invitees.

176.    Said Defendants were on notice that Berning was a danger to female students and staff and was engaging in unwanted physical sexual advances towards females through his positions and authority as an agent and representative of NMSU, but, acting with deliberate indifference, failed to take reasonable measures to prevent Berning's discriminatory practices,

protect the bodily integrity and safety of female students and staff, or otherwise ensure Berning's actions were in compliance with state and federal law and the Constitution.

177.    Said Defendants had a duty to protect the bodily integrity and safety of female students, staff and alumni and to take reasonable actions to ensure Berning and other professors were not engaging in sexually inappropriate and/or violent conduct towards vulnerable students, staff and alumni.

178.    Said Defendants, acting with deliberate indifference, did not take reasonable actions to protect the bodily integrity and safety of female students, staff and alumni or to ensure Berning and other professors were not engaging in sexually inappropriate and/or violent conduct towards vulnerable students, staff and alumni.

179.    Said Defendants were aware of a substantial risk of danger to female students, staff and alumni presented by Berning and his activities.

180.    Said Defendants were deliberately indifferent to the foreseeable substantial risk to female students, staff and alumni presented by Berning and failed to take reasonable corrective action or other reasonable steps to mitigate that risk.

181.    Said Defendants had a pattern, practice and custom of failing to adequately supervise and discipline faculty and staff in response to reports of inappropriate conduct towards female students, staff and invitees.

182.    Said Defendants, acting with deliberate indifference, either instituted or permitted a practice, policy, or custom in which female students, staff and invitees at NMSU were not adequately protected from unwanted sexual advances and physical, sexual and psychological abuse by faculty and staff, in particular within the kinesiology department.

183.    Said Defendants, acting with deliberate indifference, either instituted or permitted a practice, policy or custom condoning or ratifying assault, sexual harassment and sexual violence by faculty and educators against female students, staff and invitees.

184.    Said Defendants, acting with deliberate indifference, either instituted or permitted a practice, policy or custom of inadequate, unreasonable and/or meaningless response, supervision and discipline of faculty and staff that abused, assaulted and/or harassed female students, staff and invitees.

185.    Said Defendants, acting with deliberate indifference, either instituted or permitted a practice, policy or custom that promoted the hostile and abusive sexualized environment Plaintiff endured from Berning and Carson.

186.    Said Defendants, acting with deliberate indifference, either instituted or permitted a practice, policy or custom condoning or ratifying assault, sexual harassment and sexual violence by faculty and educators against female students.

187.    Said Defendants failed to enforce practices, policies or customs to curtail hostile and abusive sexualized environments towards female students, staff and invitees and to instruct and address faculty and staff engaged in abusive behavior.

188.    Said Defendants, acting with deliberate indifference, violated Plaintiff's civil rights, including the right to equal protection under the law and to be free from unlawful discriminatory practices by state actors, up to and including the handling of the Title IX action and dismissal and resolution thereof.

189.    The actions and omissions of Defendants exhibited deliberate indifference and proximately caused Plaintiff's injuries.

190.    The policies, practices or customs of Defendants proximately caused Plaintiff's injuries.

191.    The actions and omissions of Defendants proximately caused Plaintiff's injuries.

<u>Count III</u>
(All Defendants – Title IX)

192.    The preceding paragraphs are incorporated as if fully stated herein.

193.    Plaintiff was a student and student-staff member of NMSU.

194.    Plaintiff endured harassment, assault, and abuse so severe, offensive, and pervasive so as to deprive Plaintiff of access to educational and professional development opportunities and/or benefits provided by and through NMSU.

195.    NMSU and Defendants knew Defendant Berning was engaging in harassment, sexual assault and abuse of female students and had constructive knowledge of the specific harassment, sexual assault and abuse of Plaintiff.

196.    NMSU and Defendants had the authority, ability, and wherewithal to rectify and/or remedy the hostile, harassing, assaultive and abusive environment faced by female students but was deliberately indifferent to the actions of Defendants Berning and Carson and the likelihood of injury to Plaintiff and other female students, and failed to so rectify and/or remedy the hostile environment.

197.    NMSU and Defendants had a duty pursuant to 20 U.S.C.  § 1681 (Title IX) to provide an educational environment free from any exclusion, denial of benefits, or discrimination on the basis of sex.

198.    The duties of NMSU and Defendants included a responsibility and duty to ensure equitable treatment of Plaintiff through Title IX proceedings and to follow regulatory requirements for those proceedings.

199.    The manner in which NMSU and Defendants conducted said proceedings violated these duties and responsibilities and itself constituted discrimination against Plaintiff on account of sex in violation of Title IX.

200.    NMSU, acting through its agents, employees, and/or representatives, including the other Defendants, established policies and customs permitting and/or condoning sexual assault and abuse of students by faculty and staff during sanctioned activities, including, but not limited to, policies and customs of failing to adequately and reasonably discipline sexual misconduct by male faculty directed towards female students.

201.    The above resulted in Plaintiff being subjected to the extreme abuse outlined herein in connection with NMSU activities and on NMSU grounds.

202.    The above lead to Plaintiff having to forego the assistance and connection of NMSU in advancement of her educational and professional opportunities that NMSU and its faculty and staff were to provide.

203.    NMSU and Defendants did not adequately provide training to faculty and staff on responding to potential inappropriate behavior, to include sexually inappropriate conduct with students and staff.

204.    NMSU and Defendants exhibited recklessness and deliberate indifference to the abuse, harassment and sexual violence directed towards female students and staff, including Plaintiff.

205.    This recklessness and deliberate indifference included the handling of the Title IX proceedings discussed above, including dismissal of the same.

206.    Plaintiff was deprived of benefits, including educational and professional advancement opportunities by the conduct of Defendants, and she was subjected to discrimination

on the basis of her sex in an educational program or activity receiving financial assistance from the federal government in violation of Title IX by Defendants' actions up to and including the handling of the Title IX proceedings in 2022.

207.   The discriminatory violation of Title IX proximately caused Plaintiff injuries.

208.   Defendants conduct was egregious and created unreasonable risk to Plaintiff and other members of the class of female students at NMSU.

209.   Defendants conduct was egregious and created unreasonable risk to Plaintiff and other members of the class of female staff at NMSU.

210.   Defendants conduct shocks the conscience and was intentional, reckless, willful and exhibited callous indifference to the rights of Plaintiff.

<u>Count IV</u>
(All Defendants – NMSA 1978, § 41-4-6)

211.   The preceding paragraphs are incorporated as if fully stated herein.

212.   NMSU and its employees, officials, contractors, and agents, including the Defendants, had a duty to act reasonably in order to avoid injury to Plaintiff arising from unsafe, dangerous, or defective conditions on property they owned and operated, including all portions of campus.

213.   Defendants had a duty to operate and maintain the facilities of NMSU in a safe condition for the benefit of its students, staff, and invitees, including Plaintiff.

214.   Plaintiff came to NMSU and came onto its property as a student, staff member, and invitee during various times between around 2013 and 2020.

215.   As a student, staff member and invitee, Plaintiff was made to interact with Berning, whose history of sexual harassment and dangerousness to females was documented and known to NMSU and the other Defendants.

216.    At the time Plaintiff was a student, staff and invitee of NMSU, including on its property, Defendants did not maintain adequate policies and procedures to mitigate the unsafe, dangerous or defective conditions associated with Berning and the known risk presented.

217.    Defendants have the duty to ensure the implementation of such practices and procedures as are reasonably necessary to assure adequate safety to students, staff and invitees in the operation and maintenance of its facilities to avoid unsafe, dangerous, or defective conditions, and when such premises cannot be made safe, NMSU and the other Defendants have a duty to prevent someone from entering.

218.    Defendants breached said duty by negligently allowing Plaintiff onto NMSU premises without taking appropriate steps and implementing appropriate practices and procedures reasonably necessary to assure safety to Plaintiff when the risk and danger to Plaintiff was foreseeable.

219.    Said Defendants' negligence proximately caused Plaintiff's injuries.

Count V
(Defendants NMSU and Regents –
New Mexico Civil Rights Act, NMSA 1978, § 41A-4-1, *et. seq.*)

220.    The preceding paragraphs are incorporated as if fully stated herein.

221.    NMSU is a public body as defined by NMSA 1978, § 41-4A-2 as it is an institution of higher education created by the constitution of New Mexico.

222.    At all times material hereto, NMSU and Defendants and others acting in concert with them were acting on behalf of, under color of or within the course and scope of the authority of NMSU.

223.     The Bill of Rights of the Constitution of New Mexico provides for the right to equal protection of laws and equality of rights not to be denied on account of sex. *See* N.M. Const. art. II, § 18.

224.     As outlined above, the actions of NMSU, Defendants and others acting in concert with them outlined herein, up to and including the actions involving dismissal of the Title IX proceedings without notice to or involvement by Plaintiff, violated Plaintiff's right to equal protection of laws and equality of rights on the basis of sex.

225.     The Bill of Rights of the Constitution of New Mexico explicitly states that all political power and authority of public institutions derives from and is vested in the people and further provides for the right to a government and its bodies instituted solely for the good of the people. *See* N.M. Const. art. II, § 2.

226.     The Bill of Rights of the Constitution of New Mexico provides for the sole and exclusive right of the people to control the state government and its subsidiaries and subdivisions, including NMSU. *See* N.M. Const. art. II, § 3.

227.     The Bill of Rights of the Constitution of New Mexico provides all persons with the right to enjoy life and liberty and seek and obtain safety and happiness. *See* N.M. Const. art II, § 4.

228.     Inherent in these rights is the right of citizens like Plaintiff to the honest services of government.

229.     The manner in which NMSU and Defendants conducted themselves, up to and including the Title IX proceedings and the manner in which they were dismissed and resolved while hiding the same from Plaintiff violated the right of Plaintiff to the honest services of government protected by the New Mexico Bill of Rights.

230.    Whenever a woman working to expose sexual violence and gender discrimination within a public body is silenced and her complaint swept under the rug as it was here, that itself represents a violation of her civil rights and is a revictimization by the public body and actors engaged in the silencing conduct.

231.    Plaintiff was silenced and her complaint swept under the rug by NMSU, the Regents, and the other Defendants, in particular Berning, Post, the department head, John Doe 10, the college dean, and Castille, the Title IX Director, that coordinated to quiet her voice by ending the Title IX proceedings in hiding from her.

232.    The actions of Defendants and others acting in concert with them, up to and including the Title IX proceedings and the manner in which they were dismissed and resolved while hiding the same from Plaintiff violated Plaintiff's civil rights set forth in Sections 2, 3, 4 and 18 of the New Mexico Bill of Rights.

233.    The actions of NMSU, Defendants and others acting in concert with them proximately caused Plaintiff's injuries.

234.    NMSU and the Regents, as the public body, are liable for said violations of Plaintiff's civil rights pursuant to NMSA 1978, § 41-4A-3(C) as outlined herein.

Count VI<br>(Berning – NMSA 1978, § 41-4-6)

235.    The preceding paragraphs are incorporated as if fully stated herein.

236.    Berning had a duty while acting within the scope of his duties in the operation of his office and laboratory to exercise ordinary care towards others, including students, staff and invitees such as Plaintiff.

237.    Berning breached this duty when he exposed Plaintiff to sexual harassment, battery, and a known unreasonable danger and risk.

238.   Berning's negligence proximately caused Plaintiff's injuries.

<u>Count VII</u>
(Berning and Carson – Assault and Battery Pursuant to Common Law)

239.   The preceding paragraphs are incorporated as if fully stated herein.

240.   To the extent Berning and Carson are not state actors and/or agents of NMSU, they are personally liable under ordinary tort principles.

241.   Berning intended to cause harmful or offensive contact with Plaintiff when he pushed Plaintiff to the ground during a training session.

242.   Berning intended to cause the imminent apprehension of a harmful or offensive contact with Plaintiff when he removed his clothing and laughed while Plaintiff was cornered in his office.

243.   Berning intended to cause harmful or offensive contact with Plaintiff when he repeatedly physically forced and coerced her into sexual activity with him.

244.   An offensive contact with Plaintiff resulted from Berning's actions.

245.   Carson intended to cause harmful or offensive contact with Plaintiff when she collaborated, conspired and colluded with Berning to engage in non-consensual sexual activity with Plaintiff.

246.   Offensive contact with Plaintiff resulted from Carson's actions.

247.   The conduct of Defendants Berning and Carson was willful, intentional, wanton, or taken in utter disregard for the safety and well-being of others, including Plaintiff.

<u>Count VIII</u>
(Berning – Intentional Infliction of Emotional Distress)

248.   The preceding paragraphs are incorporated as if fully stated herein.

249.   The conduct of Berning was extreme and outrageous.

36

250. The conduct of Berning was intentional or in reckless disregard of Plaintiff.

251. The conduct of Berning caused extreme and severe mental distress on the part of Plaintiff.

Count IX
(Berning and Carson – Negligence)

252. The preceding paragraphs are incorporated as if fully stated herein.

253. Berning and Carson were residents and owners of the home located in or around Las Cruces and/or Dona Ana County, New Mexico.

254. Berning and Carson had a duty of ordinary care for the safety of others.

255. Berning and Carson breached said duty when they failed to take reasonable steps to avoid exposing Plaintiff to a foreseeable risk of danger as outlined above.

256. Berning and Carson breached said duty when they each failed to warn Plaintiff as to the foreseeable risk.

257. This proximately caused Plaintiff injuries.

Damages

258. The preceding paragraphs are incorporated as if fully stated herein.

259. As a proximate result of the conduct of Defendants:

a. Plaintiff endured physical pain and injury;

b. Plaintiff suffered and continues to suffer from emotional distress;

c. Plaintiff's constitutional rights were violated;

d. As a result of the above injuries, Plaintiff is entitled to recover an aware of full compensatory damages in amounts to be determined by the jury at trial.

260. The conduct of Defendants involved intentional misconduct, recklessness, gross negligence or callous indifference to Plaintiff's rights, or was motivated by malice, evil motive, or

37

intent, and thus Plaintiff is entitled to recover awards for punitive and exemplary damages separately against individual defendants for § 1983 claims in amounts to be determined at trial.

261.    To the extent Berning and Carson were not state actors, because the conduct of Defendants Berning and Carson was willful, intentional, wanton, or taken in utter disregard for the safety and well-being of others, including Plaintiff, Plaintiff is entitled to recover award for punitive damages separately against said defendants under Plaintiff's tort claims.

WHEREFORE, Plaintiff demands the following relief against Defendants:

A.    Award of compensatory damages against all Defendants, jointly and severally, for Plaintiff;

B.    Award of punitive damages against the Defendants jointly and severally;

C.    Award prejudgment and post-judgment interest on any amounts recovered for Plaintiff;

D.    The costs of bringing this action, including reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and NMSA 1978, § 42-4A-5;

E.    Trial by jury on all issues so triable; and

F.    Such other and further relief as the Court may deem appropriate under the circumstances.

Respectfully submitted,

PAUL LINNENBURGER
Lane + Linnenburger + Lane LLP
P.O. Box 6622
Albuquerque, New Mexico 87197
Ph: 505.226.7979
paul@attorneyslane.com

and

38

MEREDITH M. BAKER, ESQ.
Law Office of Meredith Baker LLC
1209 Aztec Rd. NW
Albuquerque, New Mexico 87107
Ph:  505.697.1900
meredithbaker@meredithbakeresq.com

and

JOHNN S.L. OSBORN
Law Office of Johnn SL Osborn PC
1011 Lomas Blvd. NW
Albuquerque, New Mexico 87102
Ph:  505.948.8646
josborn@jslolaw.com