**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NEVA WILLIAMS, *formerly known as*          )
*Jane Doe 1, formerly known as Jane Doe*;   )
JANE DOE 2; and JANE DOE 3,                  )
                                             )
    Plaintiffs,                          )
                                             )
v.                                           )    No. 23-cv-1059 GBW/KRS
                                             )
NEW MEXICO STATE UNIVERSITY; NEW             )
MEXICO STATE UNIVERSITY BOARD OF             )
REGENTS; JOSEPH BERNING; CAROLE              )
CARSON; ROBERT WOOD; PHILLIP POST;           )
MICHAEL MOREHEAD; LAURA CASTILLE;            )
HENRIETTA PICHON; YOSHITA IWASAKI;           )
and JOHN DOES 3-7 and 9-10,                  )
                                             )
    Defendants.                          )

## <u>MEMORANDUM OPINION AND ORDER</u>

Currently before the Court is the Joint Motion For Leave To Proceed With Pseudonym And To File Annotated Complaint Under Seal (Doc. 37) ("Motion"), filed by Jane Doe 2 and Jane Doe 3 ("the Moving Plaintiffs"[1]). Defendants filed responses in opposition to the Motion (Docs. 41, 43),[2] and the Moving Plaintiffs filed a reply (Doc. 49). Additionally, counsel presented further arguments at a hearing held on January 15, 2025 (Doc. 89), which they followed with submissions of supplemental written arguments and evidentiary materials. (Docs. 97, 98, 112). Having carefully considered and weighed the cited legal authorities, the evidentiary submissions, and counsels'

---

[1] The original plaintiff in this case, Neva Williams, has consented to using her real name and therefore is not one of the Moving Plaintiffs.

[2] Separate responses were filed by (1) the NMSU Defendants, which include New Mexico State University, New Mexico State University Board of Regents, and the Individual Defendants in their capacities as NMSU employees; and (2) Individual Defendants Joseph Berning and Carole Carson in their personal capacities. *See* (Doc. 41 at 1 n.1; Doc. 97 ¶ 2).

arguments, the Court now resolves the Motion in favor of allowing the Moving Plaintiffs to continue using pseudonyms during pretrial proceedings in this matter.

## BACKGROUND

This case arises out of allegations by three NMSU students that they experienced sexual harassment, misconduct, and/or abuse by Defendant Berning, a long-time professor and leading faculty member in the kinesiology department at NMSU. Defendants removed the First Amended Complaint from the Third Judicial District Court of the State of New Mexico on November 28, 2023. (Doc. 1). At the time of removal, Neva Williams was the only plaintiff, and she was identified in the state court complaint by the pseudonym "Jane Doe." Following removal, Williams filed a motion seeking leave to remain known by pseudonym in these federal court proceedings. (Doc. 19). Defendants were aware of Williams's identity, and did not oppose her motion when it was filed in February 2024. Accordingly, the Court granted Williams's unopposed motion. (Doc. 20).

Subsequently, the Court granted an unopposed motion by Williams to file a second amended complaint. *See* (Doc. 34). The Second Amended Complaint renamed Williams as Jane Doe 1, and added two new plaintiffs who were identified as Jane Doe 2 and Jane Doe 3. (Doc. 35). The Court's order granting the motion to amend instructed "Jane Doe 2 and Jane Doe 3 [to] submit a request for leave to proceed under pseudonym in the same manner that Plaintiff Jane Doe previously did in this matter." (Doc. 34). Thus, on May 24, 2024, Jane Doe 2 and Jane Doe 3 filed the present Motion. (Doc. 37). This time, however, Defendants opposed the requested relief to proceed anonymously. (Docs. 41, 43).

It is undisputed that Defendants have always known the identities of the Moving Plaintiffs, just as they have always known Williams's identity. In opposing the present Motion, however, the NMSU Defendants asserted that the Court should separately consider each request to proceed

under a pseudonym "[g]iven the different factual scenarios presented by each Plaintiff." (Doc. 41 at 2). Yet they explained neither what they meant by "different factual scenarios" nor why they consented to Williams proceeding anonymously but not Jane Doe 2 and Jane Doe 3. As it turns out, Defendants were not actually relying on any factual differences among the plaintiffs but instead changed their position and now oppose even Williams proceeding anonymously.[3] It further appears that Williams anticipated a challenge to her continued right to use a pseudonym, and that her "steadfast desire that her claims be heard" overrode her preference for public anonymity. (Doc. 51 ¶ 7). Therefore, "after consultation with counsel, [Williams] … de[cided] to withdraw her request to proceed under pseudonym" (*id.*) without waiting for the Court to rule on the Moving Plaintiffs' Motion.

After the Court expressed concern during a hearing on the Motion that the Moving Plaintiffs' arguments in favor of public anonymity seemed to involve platitude and possibilities but no specific factual matters, *see* (Doc. 89 at 2), Plaintiffs' counsel requested leave to supplement the record with concrete evidence concerning the psychological harms the Moving Plaintiffs will suffer if required to publicly disclose their identities, arguing that the evidence in question had not been available when the Moving Plaintiffs' claims were first added and the Motion was filed. (*Id.*). The Court granted that request, and the Moving Plaintiffs filed a supplemental brief with exhibits on January 24, 2025 (Docs. 97, 98), with the NMSU Defendants filing a supplemental response in

---

[3] This is apparent from the NMSU Defendants' suggestion in their response to the current Motion that Williams should have joined in the Moving Plaintiffs' request to use a pseudonym, supposedly because the Court only granted her leave to proceed anonymously insofar as the First Amended Complaint was concerned. *See* (Doc. 41 at 4). Although it makes no difference now, that assertion is not well founded. The Court's order granting Williams leave to proceed by pseudonym stated generally that she could "proceed at this time in the public record under the pseudonym 'Jane Doe,'" and referred to the First Amended Complaint only to direct Williams to file an annotated version under seal disclosing her identity to the Court and parties to the lawsuit. *See* (Doc. 20); *see also* (Doc. 34 (directing Jane Doe 2 and Jane Doe 3, but not Williams, to submit a request for leave to proceed by pseudonym)). Defendants could have moved for reconsideration of the agreed order authorizing Williams to proceed by pseudonym, noting their withdrawal of consent, but that is not how the proceedings unfolded.

opposition to the Motion on February 10, 2025 (Doc. 112).[4] The Motion accordingly is now ripe for ruling.

**DISCUSSION**

The NMSU Defendants assert that "[t]he Federal Rules of Civil Procedure *do not allow* pseudonyms." (Doc. 41 at 6 (emphasis added)). But that is an overstatement. The cited case observes only that "[t]he Federal Rules of Civil Procedure '*make no provision for* suits by persons using fictitious names or for anonymous plaintiffs.'" *U.S. ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249 (10th Cir. 2017) (emphasis added) (quoting *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (per curiam)). This means that the starting point for an analysis of whether to grant a request to litigate by pseudonym is "[t]he normal presumption in litigation [ ] that parties must use their real names." *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010); *see, e.g., Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 410 (10th Cir. 2005) (citing Fed. R. Civ. P. 17(a)'s general "mandate that '[e]very action shall be prosecuted in the name of the real party in interest'"); *M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998) (citing "Fed. R. Civ. P. 10(a) which requires the names of all parties to appear in the complaint").

"Despite this presumption against anonymous or pseudonymous pleading, it is common ground that this presumption can be overcome, and that courts have discretion to permit such pleading in appropriate circumstances." *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006); *see Raiser*, 127 F. App'x at 410-11 (recognizing "that there may be 'exceptional circumstances' in which a party may be allowed to proceed anonymously"). Whether the circumstances warrant anonymity in any particular case is a decision that depends upon the exercise of discretion by the

---

[4] Individual Defendants Berning and Carson did not file any supplemental response.

4

trial court, which is subject to appellate review for abuse. *Luo v. Wang*, 71 F.4th 1289, 1297 (10th Cir. 2023). Some courts have described the district court's discretion in this area as "broad." *See Doe K.G. v. Pasadena Hospital Ass'n, Ltd.*, No. 2:18-CV-08710-ODW (MAAx), 2019 WL 1612828, at *1 (C.D. Cal. Apr. 15, 2019) ("*Pasadena Hospital*"). But the Tenth Circuit has explained that *neither* party has a legal right "to be allowed anonymity or to avoid it, and that trial courts correspondingly have no unreviewable license either to grant or deny anonymity on general principles." *Zavaras*, 139 F.3d at 803 (quoting *James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993)). Instead, a trial court may grant or deny anonymity only "on the basis of an 'informed' discretion." *Id.* "Failure to take relevant factors into account or acting on the basis of legal or factual misapprehensions respecting those factors" is *not* "an exercise of [informed] discretion," and "hence potentially an abuse of discretion." *Id.* (quoting *James*).

The relevant factors for the Court to consider in exercising its discretion in this area include the reasons for the asserted need for anonymity and the countervailing interests of the opposing party and the public more generally. The Tenth Circuit has subscribed to a balancing approach, quoting from an opinion by the Eleventh Circuit, which upheld the denial of a motion to proceed under a fictitious name by a former postal employee who alleged unlawful discrimination because of his physical handicap (i.e., alcoholism):

> Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity. The risk that a plaintiff may suffer some embarrassment is not enough.

*Zavaras*, 139 F.3d at 803 (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)); *see also Frank*, 951 F.2d at 323 ("The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the customary and

constitutionally-embedded presumption of openness in judicial proceedings." (quotation marks and citation omitted). After having considered the reasons given by the Moving Plaintiffs for why they want to proceed by pseudonym, and weighing them against the public interest in open judicial proceedings and Defendants' interest in avoiding prejudice, the Court concludes that the Moving Plaintiffs should prevail. *See Doe v. Rostker*, 89 F.R.D. 158, 161 (N.D. Cal. 1981) ("Where the nature of the issue litigated and the interest of the parties demand it and no harm can be done to the public interest, proceeding by pseudonym is an acceptable approach to litigation.").

     1.     **The Moving Plaintiffs' Asserted Need For Public Anonymity**

     a.     **personal embarrassment or reputational harm**

The Court originally informed the parties that it was inclined to deny the Motion because the arguments for public anonymity at that time appeared to center on the assertion that the Moving Plaintiffs' claims involved matters of an "extremely sensitive nature," but the non-conclusory allegations in the lenghty Second Amended Complaint did not seem to support that assertion. The Second Amended Complaint includes relatively few details concerning Defendant Berning's conduct toward the Moving Plaintiffs specifically, and the few details that are included seem to describe actions that are "no more intimate than those alleged in hundreds of sexual harassment cases that are prosecuted openly in the victims' names every day in our courts." *Del Rio*, 241 F.R.D. at 160. "The Court is loath to weigh degrees of violation, and does not minimize the wrongfulness of the acts alleged or the suffering of anyone subjected to them; ...[n]evertheless, there *are* degrees of abuse[.]" *Id.* (emphasis in original)

In addition, the Court notes that the Moving Plaintiffs did not submit any declarations or other evidence to support their alleged psychological harm, relying entirely on the Second Amended Complaint and attorney argument. Accordingly, the Court was inclined to agree with

Defendants and the case law they cited concerning sexual assault cases in which public anonymity has been denied on the basis of a lack of evidence of the asserted psychological harms.[5]

### b.  social stigma and psychological harm

Personal embarrassment may not be a sufficiently compelling reason to allow use of a pseudonym, but courts have generally agreed that "social stigma" is. *See, e.g., Doe v. Neverson*, 820 Fed. Appx. 984 (11th Cir. 2020) (per curiam) (reversing a district court decision denying an alleged sexual assault victim's motion to proceed under pseudonym in a suit against an internationally acclaimed musical recording artist, stating that the district court abused its discretion in failing "to properly consider Ms. Doe's allegations about the stigma she claimed she would face").

In their recently filed declarations, the Moving Plaintiffs assert the need for public anonymity based on more than personal embarrassment or reputational harm from public disclosure of their identities; they argue they will suffer from the societal stigma of being a victim of sexual assault. *See* (Doc. 98-4; Doc. 98-5). The Court finds that the Moving Plaintiffs' arguments about social stigma have considerable force.[6] Nevertheless, while social stigma is

---

[5] *See, e.g., Doe v. Weber State Univ.*, No. 1:20-CV-00054-TC-DAO, 2021 WL 5042849, at *5 (D. Utah Oct. 29, 2021) ("Ms. Doe presents no evidence (aside from the claim that she is a sexual assault victim) in support of her request to proceed pseudonymously."); *H.A. v. Blue Valley Unified Sch. Dist. 229*, No. 20-2559-JAR, 2020 WL 6559425, at *2 (D. Kan. Nov. 9, 2020) (allegations of severe emotional distress and psychological harm without "evidentiary support for these claims in conjunction with [a] motion to proceed by pseudonym," held insufficient to warrant anonymity); *Doe H. v. Haskell Ind. Nations Univ.*, 266 F. Supp. 3d 1277, 1289 (D. Kan. 2017) (noting that the plaintiff "supplie[d] no evidentiary support" in conjunction with her motion to proceed by pseudonym for her allegations in the complaint that she "suffered emotionally from the assaults and the alleged misconduct of the defendants"); *see also Raiser*, 127 F. App'x at 410-11 (declining to allow a plaintiff to proceed anonymously where he failed to provide evidence relating to any mental or psychiatric history, "nor any particularized reasons why proceeding publicly would cause him real psychological or physical injury").

[6] *See, e.g., Treminio v. Crowley Maritime Corp.*, No. 3:22-CV-00174-CRK, 2023 WL 8004591, at *8 (M.D. Fla. Nov. 17, 2023) (finding admissible expert testimony that "[r]esearchers have examined [blaming victim's of sexual assault], and determined that there are societally held beliefs, 'sexual assault myths,' that serve to deny, trivialize or justify sexual violence exerted by men against women," and that societal attitudes "contain elements of denial of the incident(s), shifting of responsibility onto the victim, and minimizing the adverse consequences of sexual harassment," including the belief that "victims … shar[e] responsibility for the offense"); *cf. Del Rio*, 241 F.R.D. at 159–60 (noting that "[h]istorically" there has been a "regrettable inclination to blame the victim for sexual assaults" and that "[i]t

widely accepted as a basis for proceeding by pseudonym in certain specified areas,[7] whether it justifies public anonymity in the context of sexual harassment, assault, or misconduct is the subject of much debate. This is true *even though* it is generally acknowledged that "[a]llegations of sexual assault are paradigmatic example[s] of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym." *Rapp v. Fowler*, 537 F. Supp. 3d 521, 528 (S.D.N.Y. 2021) (internal quotation marks and citations omitted).

The NMSU Defendants cite *Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996), in their supplemental filing (Doc. 112 at 3), a decades old case from the Southern District of New York, which denied a motion to proceed by pseudonym brought by a woman who alleged that the rapper Tupac Shakur assaulted her. In ruling against public anonymity for sexual assault victims, the *Shakur* court acknowledged that the case was "a difficult one" and that the plaintiff, who allegedly was "the victim of a brutal sexual assault," had "very legitimate privacy concerns" with being publicly identified. *Id.* at 361. Nevertheless, the court said, "plaintiff has chosen to bring this lawsuit. She has made serious charges and has put her credibility in issue. Fairness requires that she be prepared to stand behind her charges publicly." *Id.* The arguments against public anonymity in sexual assault cases set forth in *Shakur* continue to persuade many courts, particularly in cases

---

would be callous to pretend that this atmosphere has entirely dissipated"; also acknowledging the "shame" and "damage to reputation" this societal inclination causes the victim, without discussing the possibility of additional harms such as psychological injury and/or societal stigma).

[7] Social stigma has been found sufficient to warrant proceeding by pseudonym in cases involving mental illness, homosexuality, and transsexuality. *Frank*, 951 F.2d at 324; *see also Coe v. U.S. Dist. Ct. for Dist. of Colo.*, 676 F.2d 411, 415 (10th Cir. 1982) (public anonymity generally allowed due to stigma in "abortion, birth control, and welfare prosecutions involving abandoned or illegitimate children"). It is also an accepted basis for proceeding by pseudonym in cases of sexual abuse or assault where the victim is a minor. Defendants argue that the Moving Plaintiffs do not fit into any of these categories, and, in particular, they were not minors when the alleged abuse took place. But as another judge in this district said in response to a similar argument, "[w]hile minor alleged victims are nearly always afforded the protection of pseudonymity, the Court has not unearthed a blanket rule precluding alleged victims of majority age from also securing anonymity in lawsuits." *Doe 1 v. E.N.M Univ. Bd. of Regents*, No. 23-CV-0362-GBW-JHR, 2024 WL 36060, at *2 (D.N.M. Jan. 3, 2024) ("*ENMU Regents*") (internal citation omitted).

involving celebrity defendants.[8] But the cases in question arguably are distinguishable on the ground that the status of the litigant as a public figure gives rise to "a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained." *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001).[9]

In any event, there is little doubt that "the bar for what constitutes 'social stigma,' making a matter so 'personal and highly sensitive' as to warrant anonymity," has been set relatively high for sexual assault cases, with the vast majority of courts acknowledging that "the sexual nature of the alleged wrongdoing [ ] is not necessarily sufficient to warrant pseudonymity." *Doe v. Sutton,* No. 4:23-CV-01312-SEP, 2025 WL 871656, at *4 (E.D. Mo. Mar. 20, 2025) (internal quotation marks and citations omitted). The very recent decision in *Sutton* is illustrative of the competing interests that make the decision of whether to allow a litigant to proceed by pseudonym a close call in most sexual assault or abuse cases. In a case involving fairly salacious sex-related allegations, the court still struggled with whether to permit a male plaintiff to proceed anonymously. *See id.* at *1-2. Finding that community disapproval was not enough, the court went on to grant the plaintiff's motion to proceed by pseudonym on the ground that the plaintiff alleged "he has suffered symptoms of anxiety and depression, post-traumatic disorder, and severe emotional distress because of the conduct of the defendant] and that proceeding in his own name may exacerbate his emotional distress." *Id.* at *4. The court stated that "[t]hose are legitimate concerns," *id.,* citing in support another district court case that "distinguish[ed] *Shakur*" because

---

[8] *See, e.g.*, *Doe v. Weinstein*, 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020) (denying motion to proceed by pseudonym brought by woman who alleged that movie producer Harvey Weinstein assaulted her); *Rapp,* 537 F. Supp. 3d 521 (denying public anonymity to a plaintiff who alleged to have been assaulted by actor Kevin Spacey).

[9] In addition, *Shakur* has been distinguished on the ground that the plaintiff in that case "conceded that her name, residence, and place of employment were already known to the press, rendering public identification in court filings a moot issue." *Doe v. Haynes*, No. 4:18CV1930 HEA, 2019 WL 2450813, at *3 (E.D. Mo. June 12, 2019) (citing *Shakur*, 164 F.R.D. at 362).

it "was decided 23 years ago" and "more recent cases ...now place more weight on[,] [among other things,] the psychological trauma faced by victims of sexual assault." *Haynes*, No. 4:18CV1930 HEA, 2019 WL 2450813, at *3.

Like the plaintiff in *Sutton*, the Moving Plaintiffs have alleged and submitted evidence to support (which evidence the Court need not go into) that "[t]he psychological harm of the abuse" they have suffered "has been significant and will require extensive psychological intervention and treatment." (Doc. 97 ¶ 5). The NMSU Defendants argue, based on *Doe v. Board of Regents of University of New Mexico*, No. CIV 20-1207 JB/JHR, 2021 WL 4034136 (D.N.M. Sept. 4, 2021) ("*UNM Regents*"), that "[p]sychological or mental harm is not enough to warrant use of a pseudonym." (Doc. 112 at 4). *UNM Regents,* however, is not contrary to the case law discussed above because it is not a sexual assault case. *See* 2021 WL 4034136, at *2 (distinguishing out-of-state cases involving sexual assault). Instead, it concerned a consensual sexual relationship between a UNM graduate student and a professor at the University, in which the student argued for public anonymity on the ground that discovery in the case would involve matters related to her divorce. The court rejected the plaintiff's argument, stating that she "cite[d] no cases for the proposition that divorce satisfies rule 10's limited exception, and [ ] d[id] not explain with any specificity how her divorce would reveal highly sensitive and personal issues other than alleging that the divorce was acrimonious." *Id.* The only mention of psychological harm was the court's statement that it was "sympathetic to Doe'[s] argument that the disclosure of Plaintiff's name to the public will result in psychological harm," but the court concluded "that this factor alone is insufficient to warrant pseudonymity," stressing that the discussion of psychological harm in cases involving sexual assault could not be stretched "*to any and all 'allegations of a sexual nature.'*" *Id.* (emphasis added).

10

The Court finds *ENMU Regents*, 2024 WL 36060, more pertinent to this case than the *UNM Regents* case. *ENMU Regents* involved collegiate basketball players who alleged they were sexually assaulted by the spouse of the head basketball coach. *Id.* at *2. Much of the court's discussion in that case is equally applicable here. For instance, the court held that "[t]he allegations of sexual assault perpetrated and enabled by persons in positions of trust and authority are highly sensitive and personal matters. Further, [the] [p]laintiffs' reputational and mental health injuries being litigated against may be incurred because of disclosing the [p]laintiffs' identities." *Id.* at *3. Although the "[p]laintiffs were just over the age of majority (eighteen to twenty-one years old) when the alleged abuse occurred," and therefore "technically adults," the court found that "[t]he power dynamics involved in th[e] case augment its delicate nature, particularly so when the alleged abuser is a person who occupies a position of trust (trainer) and is enabled by a person holding a position of power (coach)." *Id.*

The NMSU Defendants assert that *ENMU Regents* is "an outlier case for young college athletes sexually assaulted involving a 'complex and nuanced set of facts, relationships, and timelines.'" (Doc. 41 at 7-8 (quoting *ENMU Regents,* 2023 WL 5206924, at *4)). But the outcome in *ENMU Regents* is consistent with numerous cases. In reality, "[c]ourts have differed on whether alleged victims of sexual assault should be allowed to proceed anonymously," *ENMU Regents,* 2023 WL 5206924, at *3 (citing *Doe v. Farmington Mun. Sch*., No. CV 21-103 SCY/KK, 2021 WL 1390777, at *3 (D.N.M. Apr. 13, 2021) (collecting cases allowing and denying requests to proceed under pseudonym in sexual violence cases)). While "anonymous pleading has frequently been rejected in cases alleging sexual assault[,] [t]he pattern is far from universal" and "[t]he divergence of outcomes in these cases reemphasize that there is unlikely to be a categorical answer to the question of anonymity across all civil cases involving sexual assault. Discretion must be

exercised on a case-by-case basis, depending on the particular circumstances before the court."
*Rio,* 241 F.R.D. at 160.[10]

Moreover, as the Moving Plaintiffs argue (Doc. 49 at 2), this case too could be said to involve complex and nuanced facts, relationships, and timelines, the difference being that *ENMU Regents* involves college athletes, athletic scholarships, and NCAA eligibility versus this case, which involves kinesiology students, internships, and future careers in academia. Setting aside these factual differences, both cases involve "authority figures sexually abusing college [students] who experienced subsequent retaliation and fear similar future retribution if their names were public." *ENMU Regents,* 2023 WL 5206924, at *4. The fact that the Moving Plaintiffs were adults when the alleged abuse occurred weighs against anonymity but, as in *ENMU Regents*, is not dispositive.[11] Like the *ENMU Regents* court, this Court "acknowledges that finding the allegations highly sensitive may not alone sufficiently overcome the public's interest in fully open

---

[10] The *ENMU Regents* case is still pending in this district, with the plaintiffs still proceeding anonymously. Moreover, Chief Magistrate Judge Wormuth is the presiding trial judge in both that case and this case. The NMSU Defendants point out that Chief Judge Wormuth authored another opinion from this district, *Aguilar v. New Mexico*, No. CV 14-572 JAP/GBW, 2015 WL 13662790, at *2 (D.N.M. June 26, 2015), which they say supports their arguments. *See* (Doc.41 at 4). But *Aguilar* is distinguishable, as the issue there was whether to enter a confidentiality order to protect the reputation of a defendant accused of violating the plaintiff's civil rights. Even if the case had involved claims of sexual abuse (which it did not), a confidentiality order preventing public disclosure of evidence is more restrictive than the request here to protect only the Moving Plaintiffs' names from public disclosure. Moreover, the court's ruling denying the confidentiality order turned on the fact that the defendant had made only "conclusory claims of reputational damage." *Id.* This Court raised its concern that the Motion might be based on no more than vague and speculative suggestions of reputational harm at the January 2025 hearing, and it now finds that the Moving Plaintiffs have adequately responded to that concern.

[11] In *Doe 167 v. Sisters of St. Francis of Colorado Springs*, No. 1:20-CV-00907-WJ-LF, 2021 WL 664006 (D.N.M. Feb. 19, 2021) ("*Sisters of St. Francis*"), the court granted public anonymity to a group of plaintiffs who were fifty and sixty year old men when suit was brought but minors when the sexual abuse took place. Defendants point to the factual distinction between that case and this one concerning the age of the plaintiffs when the alleged abuse occurred. But they do not explain why the older adult plaintiffs in *Sisters of St. Francis* should receive protection from further exacerbation of their personal suffering and mental health issues, while the much younger adult plaintiffs in this case are not also protected from further exacerbation of their personal suffering and mental health issues simply based on when in their lives the personal suffering first occurred. The court in *Sisters of St. Francis* found that "shame and fear of stigmatization," *id.* at *3, were considerations for the court's analysis, and they are considerations for this Court's analysis as well.

proceedings." *Id*. But along with the evidence of psychological harm from public disclosure submitted with the Moving Plaintiffs' Motion, as well as the other factors the Court considers in the following sections, the Court finds the Moving Plaintiffs' interest in public anonymity ultimately prevails.

> c.    the injury litigated against would result from a loss of public anonymity

An additional factor the Court can consider in determining whether the Moving Plaintiffs have articulated a basis for proceeding by pseudonym is whether "the injury litigated against would result from disclosing [the] [p]laintiffs['] identities." *Id.* (quoting *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000)). The *ENMU Regents* court found this factor also weighed in favor of public anonymity for the plaintiffs in that case:

> Plaintiffs have pled that they suffered reduced playing time, subpar athletic and academic performances, scholarship loss, and ultimately transfer due the alleged sexual abuse and retaliation. Plaintiffs seek to redress this alleged injury here. In turn, Plaintiffs fear that if this lawsuit made their names public, new coaches or officials would not trust them and again[] subject them to reduced playing time, subpar athletic performance, and scholarship loss. The risk of incurring the same career and reputational injury would precipitate the mental health injury Plaintiffs seek to redress here. Plaintiffs' affidavits recite specific concerns, including hospitalization for mental health and demotion in playing level (junior college). Publicly revealing Plaintiffs' identities would facilitate the same injuries for which they are suing. Thus, exceptional circumstances favor anonymity.

*Id.*

The above quote describes injuries similar to those alleged by the Moving Plaintiffs here. The Moving Plaintiffs have pleaded that they suffered academic, mentorship, and career losses due to Defendant Berning's alleged sexual harassment and abuse as well as the NMSU Defendants' retaliation against them following their reporting of Defendant Berning's harassment and abuse. They allege that they fear they will suffer additional academic, mentorship, and career losses if

they reveal their identities to the public, which would precipitate further exacerbation of the mental health injuries they seek to redress in this litigation. The NMSU Defendants try to rebut this argument by characterizing the injury being litigated in this case as the sexual harassment and abuse by Defendant Berning. They argue that, since Defendant Berning is no longer associated with NMSU, there is no risk that the Moving Plaintiffs will incur the same alleged injury for which they seek to be compensated in this lawsuit. (Doc. 41 at 16). But that argument takes too narrow a view of the scope of the injuries claimed by the Moving Plaintiffs. The alleged injuries do not relate solely to Defendant Berning's harassment and abuse, which admittedly will not reoccur and for which the Moving Plaintiffs seek monetary compensation through this lawsuit. The injuries extend to the NMSU Defendants' complicity in Defendant Berning's conduct both before and after he was terminated from his position with the university, which allegedly caused the Moving Plaintiffs loss of career opportunities and mental suffering. They fear those are the injuries that will be repeated, not necessarily by the specific Defendants before the Court but as the result of the public's reaction to their filing of this lawsuit if their identities become known. The injuries are psychological and stigmatic in nature, and not based on any feared or anticipated retaliation by Defendants (the latter being the only category of injury that could possibly be remedied through injunctive relief in this case, which, as Defendants point out, the Moving Plaintiffs have not sought). *See ENMU Regents*, 2024 WL 36060, at *4.

## 2.    Factors Weighing Against Use of Pseudonyms

The factors that weigh against allowing use of pseudonyms in federal court litigation include the public's interest in access to legal proceedings and prejudice to the defendant from allowing public anonymity. *See Raiser*, 127 F. App'x at 411 ("because the public has an important interest in access to legal proceedings, we have held that its interest should be considered in

14

determining whether some form of anonymity is warranted"); *Zavaras*, 139 F.3d at 803 (the court

must "weigh the plaintiff's claimed right to privacy against the countervailing public interest);

*Coe*, 676 F.2d at 415 (noting that use of pseudonyms may "cause problems to defendants engaging

in discovery and establishing their defenses, and in fixing res judicata effects of judgments"); *see

also Kamehameha Schools*, 596 F.3d at 1042 ("The presumption against use of a pseudonym "is

loosely related to the public's right to open courts, and the right of private individuals to confront

their accusers.")

     The NMSU Defendants stress the importance of the public interest in access to legal

proceedings, rooted as it were in the First Amendment of the United States Constitution. *See* (Doc.

41 at 4 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), and *Richmond

Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) (plurality opinion)). But as the Fifth

Circuit has observed:

> The equation linking the public's right to attend trials and the
> public's right to know the identity of the parties is not perfectly
> symmetrical. The public right to scrutinize governmental
> functioning is not so completely impaired by a grant of anonymity
> to a party as it is by closure of the trial itself. Party anonymity does
> not obstruct the public's view of the issues joined or the court's
> performance in resolving them. The assurance of fairness preserved
> by public presence at a trial is not lost when one party's cause is
> pursued under a fictitious name. These crucial interests served by
> open trials, *see Richmond Newspapers*, 100 S. Ct. at 2826-29, are
> not inevitably compromised by allowing a party to proceed
> anonymously.

*Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. Unit A 1981); *see also Doe v. Provident Life & Add.

Ins. Co.*, 176 F.R.D. 464, 468-69 (E.D. Pa. 1997) ("Doe's use of a pseudonym will not interfere

with the public's right or ability to follow the proceedings").

     In fact, several courts have held that there is another public interest at stake, which favors

allowing alleged victims of sexual abuse or harassment to proceed anonymously: the public

interest in avoiding the deterrent effect that public disclosure of the alleged sexual assault victim's identity might have on victims of sexual assault seeking to vindicate their rights (a public interest that is particularly strong in cases involving a governmental entity defendant). *See, e.g., Pasadena Hospital,* 2019 WL 1612828, at *1 ("[A]s other courts have held, allowing sexual assault victims to proceed anonymously serves a strong public interest in protecting their identities so that other victims will not be deterred from reporting such crimes." (citing *Heineke v. Santa Clara Univ.*, No. 17-cv-05285-LHK, 2017 WL 6026248, at *23 (N.D. Cal. Dec. 5, 2017); and *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *5 (N.D. Cal. May 13, 2011) (citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); and *Evans*, 202 F.R.D. at 176))); *see also ENMU Regents,* 2024 WL 36060, at *4 (noting that "the public interest in allowing student-athletes to disclose sexual abuse without fear of reprisal" also favors anonymity); *Haynes*, 2019 WL 2450813, at *3 (noting "the easy public access of court records online, and the deterrent effect that 'outing' a sexual assault victim may have on other victims").[12]

The *Shakur* court acknowledged this deterrent effect but did not find it very compelling as a reason to allow public anonymity. *See* 164 F.R.D. at 362 (acknowledging that "victims of sexual assault [may] be deterred from seeking relief through civil suits if they are not permitted to proceed under a pseudonym," but concluding, while "[t]hat would be an unfortunate result, … plaintiff and others like her must seek vindication of their rights publicly"). The right of the defendant in the *Shakur* case to publicly confront his accuser seemed to factor greatly in the court's analysis. *See id.* at 361 ("Shakur has been publicly accused. If plaintiff were permitted to prosecute this case

---

[12] Should there be any question that denying public anonymity often leads to this deterrent effect, the Court notes that in *Doe v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, No. CIV-23-495-G, 2023 WL 6456499 (W.D. Okla. Sept. 28, 2023), immediately after being ordered to reveal their identities the plaintiffs dismissed their complaint. *See Doe v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, No. CIV-23-495-G, Docs. 14 and 15 (W.D. Okla.).

anonymously, Shakur would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity."). On the other hand, where the defendant is a governmental entity, the public interest favors encouraging the bringing of sexual misconduct lawsuits "because a challenge to governmental policy ordinarily implicates a public interest and the government has less of a concern with protecting its reputation than a private individual." *Kolko*, 242 F.R.D. at 195; *see also Sisters of St. Francis*, 2021 WL 664006, at \*4 ("the two Individual Defendants responsible for the alleged misconduct are no longer employed by NMU, "thus reducing the effect these claims have on" the NMU Defendants").[13]

The Court finds that the Moving Plaintiffs' use of pseudonyms during pretrial proceedings would impose only a relatively modest burden on the public's common law right to open judicial proceedings because all filings remain open to public inspection, and the public is only denied access to the Moving Plaintiffs' identities. Further, that limited denial of public access is counterbalanced by the public interest in avoiding the chilling effect that public disclosure of the Moving Plaintiffs' identities could have on the willingness of future victims to disclose sexual abuse by governmental actors, particularly in cases where the governmental entities themselves are alleged to have been complicit in that abuse.

---

[13] The NMSU Defendants note that the Individual Defendants are still in this case. (Doc. 41 at 20). But they also inform the Court that Defendants Berning and Carson are no longer employed at the university and have left the state. In any event, those Individual Defendants' right to publicly confront their accusers belongs to them rather than the NMSU Defendants who are asserting it. The only Individual Defendants who have appeared to defend the claims against them in their personal capacities are Defendants Berning and Carson, and they failed to file any supplemental response to the Moving Plaintiffs' supplemental filings. That failure could be construed as conceding the arguments and evidence made by the Moving Plaintiffs in their supplemental filings. *See* N.M.D. LR-Civ. 7.1(b) ("The failure to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.").

That leaves only Defendants' arguments of prejudice to them for the Court to consider and weigh. Defendants' primary argument for prejudice, and the only one the Court will discuss in any detail,[14] stems from what they call "a media frenzy" created by Plaintiffs' counsel. (Doc. 41 at 20); *see* (*id.* at 17 ("after filing of the Original Complaint, Plaintiffs' counsel openly promoted this case with the media," citing press releases issued by Plaintiffs' counsel's law firm which are attached to the NMSU Defendants' response brief)). Defendants argue that it is unfair that they "are required to mount a public defense while [the Moving Plaintiffs] are allowed to cast their allegations under the shroud of anonymity." (Doc. 41 at 19); *see also* (Doc. 43 at 7 ("It would be inequitable and unfairly prejudicial to allow Plaintiffs to proceed anonymously" because "Plaintiffs have gone out of their way to seek publicity against Defendants, particularly Dr. Berning, through the press release issued by Plaintiff's counsel.").

In the first place, Defendants' argument appears to be based on some concept of "reputational parity." *Cf. Del Rio,* 241 F.R.D. at 162 n.15 (denying defendants' request to proceed anonymously, stating that the reasons for public disclosure "do not stem from any desire to equalize the reputational harms to the parties"). In any event, as far as the record shows, the Moving

---

[14] The NMSU Defendants' additional reasons why the Moving Plaintiffs' use of pseudonyms is prejudicial to them are not persuasive. First, they argue that they are prejudiced because the Moving Plaintiffs do not explain how hiding their identities from the public will protect them from further retaliation when Defendants already know their identities. (Doc. 41 at 19). This is not a prejudice argument, however; it is an argument that challenges the Moving Plaintiffs' asserted reasons for needing public anonymity. And, as previously discussed, Defendants' exclusive focus on retaliation by any of the Individual Defendants is too narrow. The Moving Plaintiffs' cited reasons for public anonymity include the negative impacts on their future life endeavors and opportunities from the stigma of being a sexual assault victim, not necessarily the fear of specific retaliatory actions by the NMSU Defendants or Individual Defendants. Second, the NMSU Defendants claim that "anonymity hinders [their] ability to test the credibility of and recitation of facts by [the Moving Plaintiffs]." (Doc. 41 at 18). The "testing" of Plaintiffs' credibility and recitation of facts, however, occurs at trial. The only issue at this point is whether anonymity would hinder the NMSU Defendants' ability to obtain discovery on those issues, and they have not offered any explanation for why that would be the case. *See Sisters of St. Francis*, 2021 WL 664006, at *4 ("Defendants do not explain how or why public anonymity of the Moving Plaintiffs unduly embarrasses or unfairly prejudices them. Defendants know the identity of their accusers, and thus "will be able to investigate issues in discovery related to the credibility of each Plaintiff and the veracity of [their] claims."); *Provident Life & Acc. Ins. Co.*, 176 F.R.D. at 469 ("defendant has not demonstrated that its right to conduct discovery will be hampered by plaintiff proceeding in pseudonym").

Plaintiffs had no involvement in their counsel's statements to the press. The Court will not find that the Moving Plaintiffs' privacy interests are diminished by their counsel's decision "to provide commentary on the lawsuits." *Sisters of Saint Francis,* 2021 WL 664006, at *4 (rejecting a similar argument made in that case). Moreover, to the extent that Defendants' about-face on the issue of public anonymity appears to have been motivated by their desire to "even the playing field" in the court of public opinion, that strategic interest is not one that the presumption against using a pseudonym is intended to protect. *See, e.g., Evans*, 202 F.R.D. at 175-77 (whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated is a factor for the court to consider).

In sum, the Court finds that the Moving Plaintiffs' pseudonymity will have little to no impact on Defendants' ability to investigate the Moving Plaintiffs' claims. Nor will it have much impact on the NMSU Defendants' reputations, the risk of reputational or economic harm to the NMSU Defendants being less than it would be to a private party. At this juncture of the case, the Court finds exceptional circumstances warrant a departure from Rule 10 and the presumption against use of a pseudonym, and that using pseudonyms is a less restrictive privacy measure than sealing or redacting future filings and not prejudicial given that Defendants already know the Moving Plaintiffs' names. Accordingly, the Court will permit the Moving Plaintiffs to proceed by pseudonym. The Court passes no judgment on whether the Moving Plaintiffs would be entitled to anonymity were the case to proceed to trial.[15]

---

[15] *See, e.g., Doe v. Neverson*, 820 F. App'x 984, 987 (11th Cir. 2020) (stating that "the analysis of whether a plaintiff may proceed anonymously may change at different stages of the litigation" (citing *Lawson v. Rubin*, No. 17-cv-6404, 2019 WL 5291205, at *2 (E.D.N.Y. Oct. 18, 2019) (vacating order that initially allowed the plaintiffs to proceed under pseudonyms before trial because a different balance of interests comes into play at the trial phase when the jury will have to resolve critical issues of credibility)); *Does I thru XXIII v. Advanced Textile Corp*., 214 F.3d 1058, 1069 (9th Cir. 2000) ("We recognize that the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses."); *Sisters of St. Francis,* 2021 WL 664006, at *4

**CONCLUSION**

For the foregoing reasons, the Joint Motion For Leave To Proceed With Pseudonym And To File Annotated Complaint Under Seal **(Doc. 37)** filed by Jane Doe 2 and Jane Doe 3 is **GRANTED**.

IT IS SO ORDERED this 24th day of March, 2025.

_____

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

---

("The Court recognizes that, should this case proceed to trial or other developments arise, this balance could change. Accordingly, the Court remains open to reevaluating its conclusion should the need arise.").