IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEVA WILLIAMS, *et al.*,

    Plaintiffs,

v.                                                                                     Civ. No. 23-1059 GBW/KRS

NEW MEXICO STATE UNIVERSITY, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants Joseph Berning and Carole Carson's Motion for Partial Summary Judgment as to Counts X, XI, and XII. *Doc. 172.* For the reasons that follow, the motion will be granted.

## I.    Background

This action was filed by Plaintiff Neva Williams in state court on June 30, 2022, and was removed on November 28, 2023. *Docs. 1, 111-1.* Plaintiff Jane Doe 3 filed a separate action in this District on April 18, 2024. *See* Civ. No. 24-371 GJF/GBW, *doc. 1.* The claims were consolidated into the instant action on May 17, 2024, with the operative Second Amended Complaint. *Doc. 35.* Both Williams and Jane Doe 3 were students at New Mexico State University (NMSU), where Berning was a professor of kinesiology. All Plaintiffs' claims arise out of Berning's alleged abuse and the alleged participation of Carson, Berning's partner and a fellow NMSU employee.

Berning and Carson move for partial summary judgment on Counts X, XI, and XII to the extent the claims are time-barred. *Doc. 172* at 1. Count X asserts claims of assault and battery by Williams and Jane Doe 3 against Berning and Carson. *Doc. 35* at ¶¶ 423–33. Count XI asserts a claim of intentional infliction of emotional distress (IIED) by Williams against Berning. *Id*. at ¶¶ 434–38. Count XII asserts claims of negligence by Williams and Jane Doe 3 against Berning and Carson. *Id*. at ¶¶ 439–44.

Relevant to the present motion, the complaint alleges that Williams was a student in Berning's class starting in 2013 and that he verbally and physically sexually harassed her in various ways. *Id*. at ¶¶ 106, 111–12, 115–16. He had non-consensual sexual relations with her on several occasions. *Id*. at ¶ 129–31. Williams subsequently moved into Berning and Carson's home, where both of them had non-consensual sexual relations with her. *Id*. at ¶¶ 132–33.

The complaint alleges Jane Doe 3 was a student at NMSU from 2013 through December 2016, and then an employee at NMSU from December 2016 through fall 2020. *Id*. at ¶ 142–43. Berning grabbed and groped Jane Doe 3 on several occasions while on campus. *Id*. at ¶ 152, 154, 170. In or around December 2016, Berning brought Jane Doe 3 to his home and sexually assaulted her. *Id*. at ¶¶ 148–49.

2

## II.      <u>Undisputed Material Facts</u>

Based on the parties' briefing and the record as a whole, the Court finds the

following material facts are undisputed for the purposes of summary judgment:[1]

1.      Berning and Carson were educators at New Mexico State University.

PUMF 1.

2.      Berning and Carson co-owned a home in Las Cruces.  PUMF 3.

3.      Williams alleges that she left Berning's house in August 2019 and that

"mentoring conduct and coercive sexual abuse continued up until that time."  UMF 6;

*doc. 95-5* at ¶ 86.

4.      Jane Doe 3 alleges Berning sexually assaulted her in or around December

2016.  UMF 7; *doc. 35* at ¶ 149.[2]

---

[1] "UMF" refers to Defendants' Undisputed Material Facts.  *Doc. 172* at 3.  "PUMF" refers to Plaintiffs' Additional Material Facts.  *Doc. 181* at 2–5.  Where the Court cites one of the parties' material facts, it does so pursuant to Rule 56(e)(2) because the fact in question was not specifically disputed.  *See* Fed. R. Civ. P. 56(e)(2).  Where the Court cites to evidence in the record, it does so pursuant to Rule 56(c)(3), which permits consideration of "other materials in the record."  Fed. R. Civ. P. 56(c)(3).

[2] As Plaintiffs have pointed out, this undisputed material fact—and a good portion of Defendants' argument—is based on the allegations of the complaint, not on the evidentiary record.  The moving party on summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '*the pleadings*, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)) (emphasis added).  If a summary judgment motion relies solely on the pleadings, it is functionally similar to a motion to dismiss for failure to state a claim or for judgment on the pleadings. *See, e.g., Vargas-Colón v. Fundación Damas, Inc.*, 864 F.3d 14, 22 n.15 (1st Cir. 2017) (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2713 (4th ed. 2016)); *Cunningham v. New Mexico*, Civ. No. 13-142 JP/WPL, 2013 U.S. Dist. LEXIS 195575, at *13–14 (D.N.M. Sept. 5, 2013) (quoting *Fields v. Wise Media, LLC*, 2013 U.S. Dist. LEXIS 101432, at *13 (N.D. Cal. July 19, 2013)).  Here, although some of the parties' argument is based on the pleadings, some of it relies on other materials in the record.  The Court therefore considers both the allegations of the complaint and all other relevant evidence to decide whether Defendants are entitled to judgment as a matter of law.

5.      Jane Doe 3 alleges Berning engaged in repeated sexual harassment toward her between 2016 and 2020.  PUMF 7; *doc. 113-7* at ¶ 22–27.

## III.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The non-moving party is then required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324.  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citations omitted).

In applying this standard, the Court must draw all "reasonable inferences" in favor of the non-moving party.  *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998).  Summary judgment is appropriate only "where the record taken as a whole

4

could not lead a rational trier of fact to find for the non-moving party." *Id.* (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## IV.    <u>Analysis</u>

Defendants Berning and Carson move for summary judgment on Counts X, XI,

and XII on the basis, and to the extent, that they are time-barred.  *See doc. 172*.  Plaintiffs

Williams and Jane Doe 3 oppose summary judgment on the basis that the discovery rule

and continuing tort doctrine delayed accrual of their claims, and the statute of

limitations was tolled by incapacity.  *See doc. 181*.

### A.    **Applicable Statute of Limitations**

New Mexico law imposes a three-year statute of limitations on claims for

personal injury.  NMSA § 37-1-8.  This limitation applies to claims of battery, intentional

infliction of emotional distress, and negligence in cases alleging sexual abuse.  *See*, *e.g.*,

*Martinez-Sandoval v. Kirsch*, 884 P.2d 507, 509 (N.M. Ct. App. 1994); *Reed v. Barnes*, 1993

U.S. App. LEXIS 2492, at *5 (10th Cir. Feb. 8, 1993).  Williams filed suit on June 30, 2022,

and Jane Doe 3 filed suit on April 18, 2024.  *Doc. 111-1*; Civ. No. 24-371 GJF/GBW, *doc. 1*.

Therefore, to survive summary judgment, Williams' claims must have accrued no

earlier than June 30, 2019, and Jane Doe 3's claims must have accrued no earlier than

April 18, 2021.

The parties agree that according to the allegations of the complaint and the

record evidence, Williams' last relevant contact with Berning was in August 2019.  They

also agree that the last alleged tortious conduct against Jane Doe 3 was in 2020.

Therefore, Williams' claims arising before June 30, 2019, and Jane Doe 3's claims in their

entirety, are time-barred unless their accrual was delayed or the statute of limitations

tolled.

### B.   Accrual and Tolling

Plaintiffs argue that the discovery rule delayed accrual of their claims because a

reasonable, similarly-situated plaintiff would not have understood her injuries were

caused by Berning's abuse, and alternatively, that the statute of limitations was tolled

by incapacity under NMSA § 37-1-10.  *Doc. 181* at 7–14.  Under the discovery rule, the

statute of limitations begins to run when the plaintiff "knows or should know the

relevant facts, whether or not the plaintiff also knows that these facts are enough to

establish a legal cause of action."  *Slusser v. Vantage Builders, Inc.*, 306 P.3d 524, 529 (N.M.

Ct. App. 2013) (quoting *Christus St. Vincent Reg'l Med. Ctr. V. Duarte-Afara*, 267 P.3d 70,

77 (N.M. Ct. App. 2011)).  In *Martinez-Sandoval*, quoted by Plaintiffs, the court assumed[3]

that the proper test was whether "a reasonable person *in the position of the Plaintiff . . .*

*would have discovered the damage.*"  884 P.2d at 512 (quoting *Riley v. Presnell*, 565

---

[3] As in the prior summary judgment order, *see doc. 138* at 39–40, this Court likewise assumes without deciding that the quoted language articulates the proper test.  Because this standard is substantially similar to the federal discovery rule, which the Court determined did not delay accrual of Plaintiffs' federal claims, *see id*. at 12–15, it also and for the same reasons does not delay accrual of Plaintiffs' state claims.

N.E.2d 780, 785–86 (Mass. 1991)) (emphasis in original).  Under NMSA § 37-1-10, the limitations period is tolled for "minors and incapacitated persons."

The Court has already addressed these arguments on summary judgment.  *See doc. 138*.  Plaintiffs acknowledge that "the Court addressed incapacity to an extent in the context of the federal claims."  *Doc. 181* at 12 n.1.  In fact, the Court addressed incapacity under § 37-1-10 and the application of the discovery rule as to both federal and state claims.  *See doc. 138* at 12–21, 39–40.  After careful review of the evidence, the Court concluded that Plaintiffs were not incapacitated within the meaning of § 37-1-10 and that the discovery rule—whether under federal or state law—did not delay accrual of their claims.  *Id*.  Plaintiffs reprise the same arguments here.  They neither cite controlling law that mandates a different result, nor present new evidence with respect to tolling and accrual.  Therefore, the Court incorporates its prior analysis herein by reference and finds that neither the discovery rule nor § 37-1-10 apply generally to Plaintiffs' claims against Berning and Carson.

As to one claim, however, Plaintiffs' brief raises a new argument.  Jane Doe 3 contends that the discovery rule delayed accrual of her claim against Carson based on "Carson's negligence as to Berning's assaultive conduct in her home."  *Doc. 181* at 16. Generally, under New Mexico law, a homeowner owes a duty of ordinary care to keep the premises safe for visitors, including from intentional harmful conduct by a third person.  *See* N.M. R. Civ. UJI 13-1309; *Rodriguez v. Del Sol Shopping Ctr. Assoc.*, 326 P.3d

465, 468–69 (N.M. 2014).  This delayed accrual argument is not that Berning's sexual abuse rendered her unable to comprehend the relevant facts or causes, but that she was unaware of Carson's involvement in the abuse until 2022.  *Doc. 181* at 16–17.   However, while Jane Doe 3 relies on her own declaration, *see id*. at 5 (PUMF 25), she does not simply aver that she was ignorant of Carson's involvement until 2022.  Instead, she relies on circuitous, and ultimately flawed, logic chain.  The cited portions of her declaration state as follows: (1) Jane Doe 3 was unaware Berning had "a history of sexual misconduct at NMSU"; (2) she did not "know or have reason to believe that the leadership of NMSU, and my superiors, would have placed me in a position of vulnerability like that"; (3) in December 2022, after there were "rumblings amongst the students and staff about Dr. Berning," she met with Dr. Post and disclosed her experiences with Berning; and (4) Dr. Post "acted surprised" to hear this information. *Doc. 113-7* at ¶¶ 30–34.  Based these facts, her briefing reasons that because (a) she "did not have knowledge that any individual associated with NMSU had prior awareness of the propensities of Berning until 2022," and (b) Carson was an employee of NMSU; the declaration therefore establishes that Jane Doe 3 was not aware of Carson's involvement until 2022.  *Doc. 181* at 16.  The flaw in this logic is that Jane Doe 3's declaration only denies knowledge of the involvement of "the leadership of NMSU, and my superiors." *Doc. 113-7* at ¶ 33.  The declaration does not state, nor does the complaint allege, that Carson was part of the "leadership of NMSU" or was one of Jane Doe 3's "superiors."

*See doc. 35* at ¶ 143 (Jane Doe 3 was supervised by Dr. Post).  Thus, the declaration does not support the assertion that Jane Doe 3 did not learn of Carson's involvement until 2022.

It was Plaintiffs' burden to come forward with specific facts supporting application of the discovery rule.  *See Herrera v. City of Espanola*, 32 F.4th 980, 992 (10th Cir. 2022).  In the absence of such facts, Carson is entitled to judgment as a matter of law because the claim was filed outside the limitations period.

## C.   Continuing Tort Doctrine

Plaintiffs argue that accrual of their claims is delayed by the continuing tort doctrine, under which "where a tort involves a continuing or repeated injury, the cause of action does not accrue until the date of the last injury."  *Doc. 181* at 14.  Plaintiffs acknowledge that counsel has been "unable to locate New Mexico cases discussing and considering the doctrine in the context of sexual assault and abuse cases," but cite cases from several other jurisdictions where the doctrine was applied.  *Id*. at 15 (citing *M.R. v. State*, 568 P.3d 299 (Wa. 2025); *Miss. Dep't of Human Servs. v. S.W.*, 111 So. 3d 630 (Miss. Ct. App. 2012); *Feltmeier v. Feltmeier*, 798 N.E.2d 75 (Ill. 2003)).

As an initial matter, Jane Doe 3's claims are time-barred regardless of whether the continuing tort doctrine applies.  Accrual of her claims would be delayed to approximately fall 2020, *see doc. 181* at 14–15; *doc. 113-7* at ¶ 22, and she did not file suit

9

until April 18, 2024, more than three years later.  Therefore, the Court need not and does not consider the doctrine with respect to her claims.

With respect to Williams' claims, the Court must determine (1) whether New Mexico recognizes the continuing tort doctrine, and (2) if so, whether it delays accrual of her otherwise untimely claims.  On the first question, the Court considers *Martinez-Sandoval*, where the plaintiff alleged continuing sexual abuse from age fifteen to eighteen.  884 P.2d at 514.  The New Mexico Court of Appeals found her claims for battery, negligent infliction of emotional distress, and IIED were untimely because her "acquisition of a venereal disease and her pregnancy leading to an abortion were sufficiently substantial injuries that once she knew that they were caused by [the defendant], the limitations period would no longer be delayed by the discovery rule." *Id*. at 513.  The court further held that "the sexual misconduct causing Plaintiff's venereal disease and pregnancy" could not be "isolated from the remainder of [the] alleged misconduct," *id*. at 514, reasoning:

> Plaintiff treated Kirsch's alleged misconduct as a continuing tort, forming the predicate of one indivisible cause of action.  Plaintiff's approach accords with the general rule that when a series of actions by a defendant cause one indivisible harm, Plaintiff has only one indivisible cause of action.

*Id*. (citations omitted).  This language indicates that New Mexico courts would recognize some form of the continuing tort doctrine to delay the accrual of certain claims.  *See Juarez v. Nelson*, 61 P.3d 877, 882 (N.M. Ct. App. 2002), *overruled on other*

10

*grounds by Tomlinson v. George*, 116 P.3d 105, 112 (N.M. 2005) ("Plaintiffs refer us to [*Martinez-Sandoval*], where we noted with apparent approval the rule that where a series of actions by a defendant results in one indivisible harm, the plaintiff has one indivisible cause of action.").

The next question to be determined is whether the doctrine applies to Williams' claims.  By the plain language of *Martinez-Sandoval*, the continuing tort doctrine applies to a "series of actions" that give rise to "only one . . . cause of action."  884 P.2d at 514. Put another way, it does not apply to a series of actions, even if similar or related, that give rise to multiple causes of action.  This general rule accords with *Tiberi v. CIGNA Corp.*, 89 F.3d 1423 (10th Cir. 1996), which Plaintiffs also cite.  The Tenth Circuit, applying New Mexico contract and tort law, held that the continuing tort doctrine delayed accrual of the plaintiff's claims because the defendant made repeated representations that he would be compensated for his losses, so the plaintiff had "no reason to believe that he was being defrauded" until the final representation.  *Id*. at 1431.  The court noted, however, that "the doctrine cannot be employed where the plaintiff's injury is 'definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress.'"  *Id*. (quoting *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1992)).  In other words, a continuing tort occurs only where the defendant's earlier conduct did not give rise a contemporaneous cause of action, whether because the conduct was not independently sufficient to support a tort claim, or because the

11

conduct rendered the plaintiff unaware of that claim's existence.[4]  This rule differs notably from the version of the continuing tort doctrine applied in several of the out-of-state cases Plaintiffs have cited, where a continuing tort involves repeated conduct giving rise to multiple, separate causes of action.  *See*, *e.g.*, *S.W.*, 111 So. 3d at 646 ("A 'continuing tort' is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and *each day creates a separate cause of action*." (citation omitted) (emphasis added)).  Accordingly, to the extent Plaintiffs' reasoning is based on those cases, the Court finds it unpersuasive.

With this guidance in mind, the Court holds that the continuing tort doctrine does not apply to Williams' claims of assault and battery.  Under New Mexico law, the elements of a civil battery claim are: (1) "an act intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent

---

[4] This reading accords with the authority cited in support of the *Martinez-Sandoval* court's analysis.  *See* 884 P.2d at 514.  In *Baltimore S.S. Co. v. Phillips*, the plaintiff was injured while working on a ship and alleged the defendants were negligent in several different ways.  274 U.S. 316, 321 (1927).  The Supreme Court held that "the respondent suffered but one actionable wrong and was entitled to but one recovery, whether his injury was due to one or the other of several distinct acts of alleged negligence or to a combination of some or all of them."  *Id*.; *see also* 1A C.J.S. Actions § 196 (1985) (several acts of negligence resulting in one injury create one cause of action).  The multiple negligent causes of his injury did not generate multiple causes of action because he had suffered only "a single legal wrong."  *Id*.

The other cited cases address whether a plaintiff can split multiple injuries into separate causes of action if those injuries arise from a single instance of tortious conduct.  In *Derose v. Carswell*, the California Court of Appeals held that a single sexual assault, though resulting in both physical and emotional harm, did not generate two separate causes of action for the respective injuries to "person and feelings."  242 Cal. Rptr. 368, 375 n.6 (Cal. Ct. App. 1987).  In *Baily v. Lewis*, the court held that because "the asserted cause of Baily's subsequent physical and emotional difficulties is the series of batteries committed upon him by the defendant," once the limitations period began to run on the battery, it also began to run on the related physical and psychological disabilities arising from the same wrongful conduct.  763 F. Supp. 802, 810 (E.D. Pa. 1991).

apprehension of such a contact," and (2) "an offensive contact with the person of the other directly or indirectly results." *Hernandez v. Parker*, 508 P.3d 947, 957 (N.M. Ct. App. 2022) (quoting Restatement (Second) of Torts § 18). For a claim of assault, "the actor need only intend to cause another to be put in imminent apprehension of harmful or offensive contact, but the contact need not occur." *Id.* (quoting Restatement (Second) of Torts § 21). "A battery is complete upon physical contact, even though there is no observable damage at the point of contact," and "[a]n assault is complete when anticipation of harm occurs." Restatement 2d of Torts, § 899, cmt. c (1979); *see also Moore v. Portland Pub. Schs.*, 537 P.3d 544, 557 (Or. Ct. App. 2023) ("Discrete instances of battery that are separately actionable and not merely an element of a single tort, even if an ongoing pattern of abuse can be shown, do not fit within the characterization of a continuing tort.") (international quotations and citations omitted); *Floyd v. Donahue*, 923 P.2d 875, 879 (Ariz. Ct. App. 1996) (holding the continuing tort rule does not apply to repeated sexual assaults because "each claimed act is a separate assault causing separate as well as cumulative injury"). Because each alleged incident of assault or battery gave rise to a separate cause of action at the time it occurred, the Court concludes that the continuing tort doctrine does not delay accrual of Williams' claims.

Williams urges that the doctrine applies with particular force to her IIED claim against Berning. *Doc. 181* at 15. For this proposition she relies on an out-of-state case, *Pavlik v. Kornhaber*, where the court observed:

13

> It may be the pattern, course and accumulation of acts that make the conduct sufficiently extreme to be actionable, whereas one instance of such behavior might not be.  It would be logically inconsistent to say that each act must be independently actionable while at the same time asserting that often it is the cumulative nature of the acts that gives rise to the intentional infliction of emotional distress.  Likewise, we cannot say that cumulative continuous acts may be required to constitute the tort but that prescription runs from the date of the first act.

761 N.E.2d 175, 187 (Ill. Ct. App. 2001) (internal citations omitted); *see also Curtis v. Firth*, 850 P.2d 749, 755 (Idaho 1993) (extending the continuing tort doctrine to the "limited" context of IIED because "[b]y its very nature this tort will often involve a series of acts over a period of time, rather than one single act causing severe emotional distress").  To the undersigned's knowledge, New Mexico courts have not confronted this argument or addressed the continuing tort theory in the context of IIED.  Under New Mexico law, a claim of IIED requires that:

> (1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress.

*Baldonado v. El Paso Nat. Gas. Co.*, 176 P.3d 286, 294 (N.M. Ct. App. 2006) (quoting *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 342 (N.M. 2001)).  Plaintiffs cite no authority holding that an IIED claim under New Mexico law may comprise a series of independently non-actionable conduct, although courts in this District have recognized the possibility.  *See, e.g., Pirtle v. Allsup's Convenience Store, Inc.*, Civ. No. 02-509 JP/JHG,

14

2003 U.S. Dist. LEXIS 27640, at *21 (D.N.M. Apr. 2, 2003) ("Although this Court recognizes that in certain instances repeated acts or a pattern of racial discrimination might constitute extreme and outrageous conduct, the alleged single instance of racial discrimination here does not meet that high standard." (citations omitted)).

Assuming, however, that New Mexico law recognizes such a claim, it does not apply to Plaintiffs' facts. Williams' IIED claim is primarily based on numerous instances of non-consensual sexual intercourse. *See generally doc. 35.*[5] These allegations are not of a minor, cumulative nature, such that any one act would have been insufficient to support a claim of IIED. *See* Restatement 2d of Torts, § 899, cmt. c (1979) ("A cause of action for mental shock or mental distress is complete when the shock or distress occurs, if the shock or distress itself is sufficient for the tort[.]"). On the contrary, the act alleged—namely, rape—is sufficiently outrageous and indecent in nature that no other, cumulative acts were required to support a claim. *See Watkins v. Arpaio*, 367 P.3d 72, 76 (Ariz. Ct. App. 2016) (rejecting application of a continuing tort theory to the plaintiff's IIED claim where the defendant's "initial acts in a series of

---

[5] The complaint does not specify which acts or omissions support Count XI, but instead restates the elements of an IIED claim in conclusory fashion. *Doc. 35* at ¶¶ 434–38. Therefore, the Court fairly assumes that the IIED claim is based on all potentially relevant facts alleged, including the several sexual assaults.

alleged wrongdoing" were "sufficient by themselves to support a claim").  The Court

therefore finds the continuing tort doctrine does not apply to Williams' claims.[6]

## V.        Conclusion

For the foregoing reasons, Defendants Joseph Berning and Carole Carson's

Motion for Partial Summary Judgment as to Counts X, XI, and XII (*doc. 172*) is

GRANTED.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

---

[6] Although Plaintiffs' brief makes no specific argument with respect to the continuing tort doctrine and Williams' negligence claim against Berning and Carson, *see doc. 181* at 14–16, the Court finds the same reasoning applies to preclude application of the doctrine.